### In re WILSON.

(Circuit Court, D. Rhode Island. March 8, 1909.)

FOOD (§ 12*)—FOOD AND DRUGS ACT—VIOLATION—MISBRANDING.

    Syrup, 10 per cent. of which is made from maple sugar and 90 per cent. from white sugar, put up in bottles having thereon labels containing the name "Gold Leaf Syrup," with a trade-mark consisting of a gold leaf in the form of a maple leaf and stalks of sugar cane, and the words "composed of maple and white sugar" in plain and distinct letters, with the name of the maker, cannot be said to be misbranded, so that its shipment in interstate commerce constitutes a misdemeanor under Food and Drugs Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (U. S. Comp. St. Supp. 1907, p. 928).

    [Ed. Note.—For other cases, see Food, Dec. Dig. § 12.*]

Charles A. Wilson, U. S. Atty., and G. H. Huddy, Jr., Asst. U. S. Atty., for petitioner.

BROWN, District Judge. The attorney for the United States moves for leave to file an information in accordance with the practice followed in United States v. Smith (C. C.) 40 Fed. 755.

It is conceded that it is proper for the court to examine the information and the affidavits in support thereof, and if the same shall be found insufficient to deny the motion.

The information charges that a certain company shipped, by a carrier, from the state of Rhode Island to the District of Columbia, a certain article of food in bottles, to wit, syrup, bearing a certain label upon which was printed the following words: "Gold Leaf Syrup, composed of Maple and White Sugar; Huntington Maple Syrup and Sugar Company, Providence, R. I."—and that the label bore also, in the center thereof, the design and representation of the leaf of the maple tree, as the trade-mark of said company. It is alleged that the syrup was misbranded, and that—

"the design and device and said printed matter were false and misleading and calculated to deceive and mislead the purchaser thereof, in that said article of food was in fact composed principally of white sugar, and contained no substantial quantity, but, on the contrary, a very small quantity, of maple sugar, to wit, not more than 10 per centum by weight of maple sugar; whereas, said design and device, and said printed matter upon said label as aforesaid, represent. and are calculated to lead the purchaser thereof to believe, that said article of food is composed principally or in substantial part of maple sugar."

Appended to the motion is an affidavit in support of the information by an analyst of the Bureau of Chemistry to the effect that as a result of an analysis of the syrup it was found to contain approximately 90 per cent. of white sugar and not more than 10 per cent. of maple sugar.

A sample of the bottle is also presented, with a label printed in gold, blue, and red, which at the top has in plain large letters the words "Gold Leaf" in gold, "Syrup" in red, with a blue circular underscoring, a trade-mark consisting of a gold leaf, said to be a maple leaf, with stalks projecting on each side, apparently representing sugar cane, with the name of the company in smaller letters in the middle; the words "composed of" in white on a blue field, being very distinct, and the words "maple and white sugar" in blue on a white field at the bottom, being also very distinct. The very conspicuous features are the words "Gold Leaf Syrup," "Composed of," and "Maple and White Sugar."

It is impossible, upon the most partial interpretation of these statements, and having in mind the decisions of the courts concerning what amounts to fraudulent misrepresentation upon labels, to find any intimation as to the proportions of maple and white sugar contained in this preparation, which is given the general title of "Gold Leaf Syrup." The purchaser is informed in the most distinct and unequivocal manner that he is buying a compound of maple and white sugar, and from the report of the analyst it appears that this is the fact. There is no statement contained on the label which is in the slightest degree calculated to convey the impression that there is more maple than white sugar, and, if a purchaser should suppose that there was, such an idea would come entirely from his own imagination, and not from any suggestion fairly implied by the label. The label affords not the slightest evidence of an intention to convey such an idea to the purchaser.

Such remote possibilities of the imagination cannot be a basis for a proper interpretation by the court of terms of clear and unambiguous meaning. The label says nothing of proportions, either directly or by any reasonable implication.

As to the maple sugar, it appears as a fact that 10 per centum is contained in the avowed compound. The article is designed for table use. The addition of so substantial an amount of maple sugar as 10 per cent., if sufficient to give to this compound syrup a maple flavor, serves to make the article more palatable and to satisfy the purpose of the buyer. A person who should buy this syrup would expect that he was getting a considerable portion of white sugar, with the addition of a sufficient amount of maple sugar to please his palate. Unless his palate is disappointed by the absence of the flavor which he expects, I am unable to imagine how there can be any variance between the contents of this bottle and the statements on the label. Even if we search this label with a most prejudiced eye, and endeavor to discover upon it some innuendo or insinuation, we are at great difficulty in finding even the most remote suggestion. Is there an innuendo that there is more maple than white sugar in the composition? Clearly not. Is there an innuendo that there is more than 10 per cent. of maple sugar? Viewing this in the light of the subject-matter, to wit, the purpose of the purchaser and the expectations aroused in him as a consequence of statements on the label, I am unable to perceive any more definite suggestion than that there is imparted to the Gold Leaf Syrup a desirable quality due to the presence of maple sugar.

In order to convict a person of misbranding upon such a showing of fact, the court would be obliged to go entirely beyond all the established legal principles upon the question of deceit and misrepresentation, and beyond any of the decisions of the equity courts as to what is abhorrent to the conscience of a chancellor. In fact, I think that we should be obliged to go, not only outside the boundaries of legal and equitable rules, but also outside the boundaries of rational common sense.

From examination of former cases dealing with the subject of misleading representations on labels, I am impressed with the great value of the legislation known as the "Pure Food Act" (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1907, p. 928]); but I am further impressed with the fact that an attempt to apply that act to cases of this character cannot but serve to bring that act into such disfavor as to impair its usefulness. The distinction between the enforcement of law and the abuse of law is lost sight of in the attempt to make this obviously innocent act a criminal misdemeanor.

The motion for leave to file the information is denied.