## UNITED STATES v. JOHNSON.

(District Court, W. D. Missouri, W. D. January 8, 1910.)

DRUGGISTS (§ 5*)—FOOD AND DRUGS ACT—CONSTRUCTION—"MISBRANDING."

The purpose of Food and Drugs Act, June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187), was to protect the public health against adulterated, poisonous, and deleterious food and drugs, and in view of such purpose under section 8, which defines "misbranding" as including articles of food or drugs "the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular," a medicinal preparation cannot be said to be mis-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

branded and its sale or shipment in interstate commerce a criminal offense under the act merely because of a misrepresentation on the label as to its curative effect.

[Ed. Note.—For other cases, see Druggists, Dec. Dig. § 5.*]

Criminal prosecution by the United States against O. A. Johnson. On motion to quash indictment. Motion sustained.

A. S. Van Valkenburg, U. S. Atty., for the Government.

Harkless & Histed, for defendant.

PHILIPS, District Judge. The defendant has filed motion to quash the indictment, for the principal reason that it does not disclose an indictable offense. It is predicated of what is known as the "Pure Food and Drug Act," entitled "An act for preventing the manufacture, sale, or transportation of adulterated or misbranded or poisonous or deleterious foods, drugs, medicines, and liquors, and for regulating traffic therein, and for other purposes." Approved June 30, 1906. Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187). It contains six counts.

The first count, in substance, charges that the defendant shipped from one state to another certain articles designated as "Cancerine Tablets," "Antiseptic Tablets," "Blood Purifier," "Special No. 4," "Cancerine No. 17," "Cancerine No. 1," which constituted "Dr. Johnson's Mild Combination Treatment for Cancer." It charges that they were misbranded within the meaning of the act aforesaid, in that the broken packages, etc., of "Cancerine Tablets" were labeled and branded as follows, to wit: "Complies with the Food and Drug Act, June 30, 1906. Cancerine Tablets. Take two tablets in water every three hours during the day. Do not take more than four doses in twenty-four hours. Prepared for and distributed by Dr. O. A. Johnson, 1233 Grand Ave., Kansas City, Mo."—which said label or brand is alleged to be false and misleading, in that it bears the name "Cancerine Tablets," which statement, regarding such articles and substances contained therein, is false and misleading, in that it implies that said tablets will cure, and are effective in bringing about the cure of, cancer, which was untrue, and that they were worthless and ineffective for such purpose.

The second count is predicated of packages containing "Blood Purifier," which were misbranded within the meaning of said act, in that they were labeled:

"Guaranteed under the Pure Food and Drug Act, June 30, 1906, Serial No. 18131. Contains not more than 20 per cent. alcohol. Dr. Johnson's Mild Combination Treatment for Cancer. Blood Purifier. This is an effective Tonic and Alterative. It enters the circulation at once, utterly destroying and removing impurities from the blood and entire system. Acts on the Bowels, Kidneys and Skin, eliminating poisons from the system, and when taken in connection with the Mild Combination Treatment gives splendid results in the treatment of cancer and other malignant diseases."

This was followed with directions how to take the remedy. The charge is then made that said label was false and misleading, in that it bears false statement that said drug is a part of the treatment for can-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cer, etc., whereby it held out and falsely claimed that said drug is efficacious in the treatment of cancer, etc., when in truth and fact the drug contained in said packages is worthless and ineffective for such purpose.

The third count is predicated of packages under the name of "Blood Purifier," and is in effect the same as the preceding shipment, only to a different party.

The fourth count is predicated of packages and bottles under the name of "Special No. 4" with the label "Dr. Johnson's Mild Combination Treatment for Cancer. Special No. 4," with directions as to how it was to be applied and used, and its effect. This label is charged to be false and misleading, in that it would not accomplish the results stated.

The fifth count is predicated of shipments of boxes, etc., containing "Cancerine No. 17," with directions as to how the same should be applied and used. The indictment charges that these were false and misleading, in that said drug was offered as part of the treatment for cancer, holding out and representing that said drug will cure, and is effective in bringing about the cure of, cancer, when, in fact and in truth, it was not effective for such purpose.

The sixth count is predicated of a shipment of box or carton called "Cancerine No. 1," which is alleged to be misbranded within the meaning of the act, in that the label contained the following: "Dr. Johnson's Mild Combination Treatment for Cancer, Tumor and Other Chronic Diseases. Cancerine No. 1."—with directions as to how the same should be applied and used. Said label or brand is alleged to be false and misleading, in that it bears thereon the name "Cancerine No. 1," statements regarding such articles and substances contained therein which are false and misleading, in that said drug was represented as part of the treatment for cancer, and that it would cure, and is effective in bringing about the cure of, cancer, etc., when, in truth and fact, it is wholly worthless and ineffective for the purposes recommended.

From which it is apparent that no charge is preferred by the indictment that the drug or medicine was adulterated, or that it contained anything that was poisonous or deleterious, or that it contained less than what was represented, or that in any respect there was any misbranding as to the contents and composition thereof. The substantive charge is that the articles manufactured and shipped by the defendant are and were inefficacious in producing the cures and remedies indicated by the label. The question, therefore, to be decided is whether this presents an indictable offense within the provisions of the pure food and drug act.

The very title of the act indicates its scope and purport. Its underlying purpose was to protect the public health against imposition upon the users of food, drugs, and medicines which were adulterated, misbranded, poisonous, or deleterious. To this end, the first section of the act makes it unlawful and an indictable offense "for any person to manufacture * * * any article of food or drug which is adulterated or misbranded, within the meaning of the act." The second section forbids the introduction into any state, etc., or from any

foreign country, or shipment to any foreign country, of any article of food or drug which is adulterated or misbranded within the meaning of the act, etc. The third section directs that the Secretary of the Treasury, of Agriculture, and of Commerce and Labor, shall make uniform rules and regulations for carrying out the provisions of the act. The fourth section declares that the examinations of specimens of foods and drugs shall be made in the Bureau of Chemistry of the Department of Agriculture, or under the direction and supervision of such bureau, "for the purpose of determining from such examinations whether such articles are adulterated or misbranded within the meaning of this act." Section 5 declares the duty of district attorneys, to whom the Secretary of Agriculture shall report any violation of this act. Section 6 declares that the term "drug," as used in the act, shall include all medicines and preparations recognized in the United States Pharmacopœia or National Formulary for internal or external use, and any substance or mixture of substances intended to be used for the cure, mitigation, or prevention of disease of either man or animal. Section 7 then specifies when an article shall be deemed to be adulterated. In case of drugs, if it differs from the standard of strength, quality, or purity, as determined by the test laid down in the United States Pharmacopœia or National Formulary: "Provided, that no drug defined in the United States Pharmacopœia or National Formulary shall be deemed to be adulterated under this provision if the standard of strength, quality, or purity be plainly stated upon the bottle, box, or other container thereof although the standard may differ from that determined by the test laid down in the United States Pharmacopœia or National Formulary," or if its strength or purity fall below the standard under which it is sold, or any substance has been substituted wholly or in part for the article, or any valuable constituent of the article has been wholly or in part abstracted, or if it be mixed, colored, powdered, coated, or stained in a manner whereby damage or inferiority is concealed, or if it contain any added poisonous or other added deleterious ingredient which may render such articles injurious to health (with a certain provision), or if it consist in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance, or any portion of an animal unfit for food, etc. Section 8 is as follows:

"That the term 'misbranded', as used herein, shall apply to all drugs, or articles of food, or articles which enter into the composition of food, the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular, and to any food or drug product which is falsely branded as to the state, territory, or country in which it is manufactured or produced."

It is conceded that the indictment is predicated of the words contained in the foregoing section 8:

"The package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular."

In other words, the contention is that the label on the bottle or container, as to the curative or remedial effect of the contents, is a mis-

branding within the meaning of the statute, if, in fact, the prescription be ineffectual for the purpose indicated. This, it seems to me, is an entire misconception of the term "misbranding" as used in the act. The language, "the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular," must be read and interpreted so as to have regard to its context, and is to be restrained by the subject-matter of the act.

Having regard to the intendment of the whole act, which is to protect the public health against adulterated, poisonous, and deleterious food, drugs, etc., the labeling or branding of the bottle or container, as to the quantity or composition of "the ingredients or substances contained therein which shall be false or misleading," by no possible construction can be extended to an inquiry as to whether or not the prescription be efficacious or worthless to effect the remedy claimed for it. Pretermitting any expression of opinion as to how far Congress may go in the direction claimed under this indictment, it is sufficient to say that this legislation, predicated of the commerce clause of the federal Constitution, it must be conceded, presses the power of the general government close to the confines of limitation. In the debates in Congress, when this measure was under consideration, it was never sought to be justified except on the ground of protecting the public health, as it might be affected by interstate shipments of food, drugs, etc. At no time was it asserted or pretended that it was proposed to reach the matter of holding the manufacturers and vendors of prescriptive or patented medicines, multitudinous and multiform as they are, to criminal liability for misstatements as to the curative or remedial effects of the prescription, which would necessarily depend upon the opinions of contending experts and the users of the nostrums. As this is a criminal statute, creating a new offense, it must be strictly construed and applied. It must be restrained to its expressed, reasonable intendment; otherwise, the courts, by mere construction, may extend its operation far beyond the legislative intent. If it had been the mind of Congress to make it an indictable offense for such manufacturers and vendors by their labels or brandings on bottles and packages to mislead the buyers as to the curative or healing properties of the drugs, as to the mere matter of commendation, apt words, both in the title and body of the act, could and should have been easily employed to indicate such purpose, and not leave it to the courts by strained construction to read it into the statute.

The motion to quash is sustained.