LIBBY, McNEILL & LIBBY v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. November 12, 1913.)

No. 1174.

1. Food (§ 5*)—Pure Food Statutes—Meaning of Words Used on Labels.

Pure food laws are enacted for the protection of the general public as the ultimate purchasers, and where words in everyday use are found on the label of a food product, they are to be given their ordinary and popular meaning, rather than the commercial meaning which they have acquired among manufacturers and dealers.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 5.*]

2. Food (§ 5*)—Food and Drugs Act—Adulteration and Misbranding.

Food and Drugs Act June 30, 1906, c. 3915, § 8 (4), subd. 1, 34 Stat. 771 (U. S. Comp. St. Supp. 1911, p. 1359), which provides that mixtures or compounds known as articles of food under their own distinctive names shall not be deemed adulterated or misbranded when sold under such name, and not an imitation of or sold under the distinctive name of another article, does not apply to a case where the name used in its popular meaning is accurately descriptive of another well-known food product.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 5.*

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

3. Food (§ 5*)—Food and Drugs Act—Misbranding.

A food product sold under the name of "Condensed Skimmed Milk" held to be adulterated and misbranded, where it contained 42 per cent. of cane sugar, the presence of which was not indicated on the label; it being shown that condensed skimmed milk unsweetened is also made and sold.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 5.*]

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Prosecution by the United States against Libby, McNeill & Libby, a corporation. Judgment of conviction, and defendant brings error. Affirmed.

R. Randolph Hicks, of Norfolk, Va. (H. J. Aaron, of Chicago, Ill., on the brief), for plaintiff in error.

D. Lawrence Groner, U. S. Atty., of Norfolk, Va.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. This is a prosecution under the Food and Drugs Act. It raises two questions as to the construction of that statute:

First. Are words in everyday use to be given, when found on the labels of food products, their ordinary and popular meaning, rather than the commercial significance which they have acquired among manufacturers and dealers?

Second. Does the first proviso to section 8 of the act permit the use as a name for a compound or mixture intended for food of common words which will to an ordinary man appear to be descriptive, but which, if so understood, will be false and misleading?

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff in error was the defendant below. It will be so called here. It is a Maine corporation. Its factory is in Chicago. Among other things it there prepares what it calls the "Target Brand of Condensed Skimmed Milk." It does not put out this product under its own name, but under that of the "Foster Packing Company." That designation is not the name of an actual corporation, but is a mere trade-name under which the defendant, for some reason of its own, chooses to market some of its products. It is admitted that what it labels "Condensed Skimmed Milk" contains something more than two parts of cane sugar to something less than three parts of the more nearly solid constituents of skimmed milk. The information charged that the product was adulterated, because cane sugar had been in part substituted for skimmed milk, and that it was misbranded, because the label was false and misleading, in that the contents of the can were not wholly condensed skimmed milk, but were to the extent of 42 per cent. cane sugar.

The record shows that milk which has been reduced by evaporation to a fourth or less of its original weight is sometimes sweetened and sometimes is not. When it is sweetened, sugar is added to the skimmed milk while the latter is still in its natural state, in the proportion of 3 parts of sugar to 20 parts of milk. The mixture is then subjected to a process of condensation by evaporation, the effect of which is to reduce its weight by about 70 per cent. Of the 30 per cent. remaining, upwards of two-fifths will be sugar. Unsweetened. skimmed milk is condensed or evaporated in the same manner, except that, of course, no sugar is added to it. Unsweetened condensed or evaporated milk, whether skimmed or unskimmed, must be thoroughly sterilized before being hermetically sealed. After the seal is broken, it will not keep as long as the sweetened. In the latter the sugar acts as a preservative.

The defendant offers much evidence that manufacturers and wholesale and retail dealers of and in food products know that what passes under the name of "condensed milk" or "condensed skimmed milk" contains a large percentage of sugar. Many of them said that when they order condensed skimmed milk they expect to get the sweetened article. If the unsweetened were sent them, they would feel that they had been imposed upon. From the testimony of some of these witnesses, however, it appeared that there were on the market many brands of sweetened condensed skimmed milk which were labeled "sweetened," and others which, containing no added sugar, were marked as "unsweetened."

[1] The defendant asked the court to give eight instructions to the jury. Six of these, although in varying phraseology, were to the effect that, if condensed skimmed milk as commercially known is concentrated milk to which sugar has been added, the defendant must be acquitted. These instructions were refused.

There is no question that words should sometimes be given their trade or commercial meaning rather than their more ordinary one. Such has been long the rule of construction applied to tariff and revenue acts.

Laws regulating the payment of duties are for practical application to commercial operations, and are to be understood in a commercial sense. Such laws are intended for practical use and application by men engaged in commerce, and hence it has become a settled rule in the interpretation of statutes of this description to construe the language adopted by the Legislature and particularly in the denomination of articles according to the commercial understanding of the terms used. Tyng v. Grinnell, Collector, 92 U. S. 470, 23 L. Ed. 733.

On the other hand, when it is alleged that a particular description, branding, or method of offering of goods for sale will enable one dealer to pass off his products for those of another, it is usually immaterial whether dealers in such articles are deceived or not. The inquiry in such cases is whether the ultimate purchaser will be misled. Hopkins on Trade-Marks, § 106.

Pure food laws are intended to protect the public, whose members may be, and in the more numerous part usually are, ignorant of the technical significance which ordinary words may have acquired in particular trades or industries. The Supreme Court of Michigan has said that decisions construing revenue acts—

"do not apply to cases arising under the pure food laws of state governments. Courts will take cognizance of the well-known fact that farmers, laboring men, and consumers are not generally familiar with the customs of trade and commerce in importing goods; or of the understandings of the trade between manufacturers and merchants who buy these products for retail trade. Such construction would emasculate the pure food laws, and deprive the people of the protection which the Legislature wisely intended to give them." Armour & Co. v. Dairy and Food Commissioner, 159 Mich. 10, 123 N. W. 580, 25 L. R. A. (N. S.) 616.

We fully concur in this statement of the true rule of construction to be applied to pure food statutes, whether state or federal. It follows that the learned judge rightly refused to instruct the jury otherwise.

[2] The other two requests of the defendant for instructions were that the jury should be told in effect that, if they should find that condensed skimmed milk as manufactured and sold to the public is a mixture or compound sold under its own distinctive name, the defendant was not required to indicate on the label of the product the presence of sugar in it. These requests were also denied.

It is not necessary in this case to attempt an exhaustive construction of the first proviso of section 8 of the act. In our view it has no application to the facts of this case. The words on the label were all in ordinary use. Each and every one of them could and would be understood by the general public to have been intended to convey their accustomed meaning; that is to say, the average man who read the label would suppose that the can contained skimmed milk which had been reduced in bulk by evaporating or otherwise driving off a part of its fluids.

Defendant does not question that unsweetened milk may be and habitually is subjected to this process and that a marketable product is thereby obtained. The description on its label would be strictly accurate if applied to such milk product, provided that the words

used are to be given their customary significance. Under such circumstances, the defendant may not use them to indicate the presence in substantial quantities of a constituent, the existence of which in the product they in their ordinary meaning impliedly deny.

[3] The construction which is here put upon the statute works no hardship upon the defendant or upon other manufacturers and dealers in like case with it. It does not claim that its trade will be hurt by telling the purchasers of its goods that there is sugar in them. Its whole contention here rests upon the assumption that they already know that there is. If that be true, no harm will be done by stating the fact in plain language upon the label.

The defendant assigns error in the instructions actually given by the court below. They, however, do not appear to be open to criticism. They left to the jury to find, in addition to the other essential facts, whether sugar was a component part of condensed skimmed milk.

Affirmed.