UNITED STATES v. 17 BOTTLES, LARGE SIZE, AND 65 BOTTLES, SMALL SIZE, MORE OR LESS, OF AN ARTICLE OF DRUGS LABELLED IN PART "B. & M."

Nos. 4666, 4667.

District Court, D. Maryland.

Jan. 5, 1932.

Simon E. Sobeloff, U. S. Atty., and James K. Cullen, Jr., Sp. Asst. U. S. Atty., both of Baltimore, Md.

Melvin M. Johnson, of Boston, Mass., and George S. Yost, of Baltimore, Md., for claimant.

CHESNUT, District Judge.

In these consolidated cases the government seeks to condemn under the act of Congress known as the Food and Drugs Act of June 30, 1906, as amended in 1912 (United States Code, title 21, §§ 1–15 [21 USCA §§ 1–15]), certain cartons containing bottles of a proprietary drug arbitrarily called "B. & M." It is alleged in the libels that this drug is (1) adulterated and (2) misbranded, within the meaning of the act. The act is operative, so far as the states are concerned, only to interstate commerce, and it is alleged in the libels that the offending packages were shipped from Massachusetts to Baltimore.

Section 14 of title 21 of the United States Code (21 USCA § 14) provides that the procedure in such cases shall begin by a process of libel for condemnation, and that the procedure shall conform as near as may be to proceedings in admiralty, except that either party may demand trial by a jury of any issue of fact. In accordance with this procedure the manufacturer of the drugs, the F. E. Rollins Company, a corporation of the state of Massachusetts, with principal office in Boston, has appeared as claimant of the seized articles and has filed exceptions to the legal sufficiency of the libels. It is admitted by the claimant that its preparation is a drug subject to the provisions of the act. It is sold to the consumer in paper cartons containing bottles. The outside of the cartons contain certain printed matter descriptive of the drug and the uses for which it is recommended. The bottles also contain labels with similar information and directions for use. Inside the cartons, but not physically annexed thereto or to the bottles, is a printed booklet of 32 pages containing much more extensive information and description of the drug and its properties and its claimed effects. It is stated to be "for external use" and "for application and inhalation in the treatment of tuberculosis, influenza, pleurisy, bronchitis and other respiratory diseases" and "for application and relief" of inflamed muscles, rheumatism, neuralgia, neuritis, sciatica, lumbago," and other diseases and injuries.

Three questions of law are presented as follows:

(1) Is the drug "adulterated" within the meaning of the act?

(2) Is it "misbranded" within the meaning of the act, in that certain of the statements in the booklet referred to are *false and misleading?*

(3) Is it misbranded because certain other statements in the booklet are *false and fraudulent* within the meaning of the act?

These questions will be discussed in the order stated.

*Adulteration.* It is, of course, clear enough that in the construction of language upon the cartons or bottle labels or in the booklet the meaning given to the language is that ordinarily conveyed by it to purchasers. Libby, McNeil & Libby v. United States (C. C. A. 4th) 210 F. 148; Hall v. United States, 267 F. 795 (C. C. A. 5th); United States v. 150 Cases, 211 F. 360 (D. C. Mass.); Chichester Chemical Co. v. United States, 60 App. D. C. 134, 49 F.(2d) 516. But the term "adulterated" is given a special definition by the act, title 21, U. S. Code, § 8 (21 USCA § 8). In the case of drugs the term as thus defined means (1) when it is sold under a name recognized by the United States Pharmacœpia or National Formulary, that it differs from the standard of strength, quality, or purity as determined by those publications, and (2) where not sold under such a standard name, "if its strength or purity fall below the professed standard or quality under which it is sold."

Paragraph 2 of the libels alleges that this drug is adulterated "in this, that said article is sold under its own standard of strength to wit, 'for external application, inhalations, antiseptic'—and 'an antiseptic * * * application,' 'for antiseptic applications,' while in truth and fact the *strength*

of said article falls below such *professed* standard in that the article is not antiseptic when used as directed in the labelling thereof."

■ This statement appears on the cover and on the inside of the "booklet," which, as stated above, is inclosed in the carton, but not physically annexed thereto, or to the label on the bottle. The label on the bottle, however, contains the following reference to the booklet: "For full directions and information please read the booklet which accompanies this bottle." It is objected by the claimant that the contents of the booklet are to be disregarded because they do not appear on the *outside* of the package. The same point is made and hereafter more fully discussed in connection with the charge of misbranding. It is sufficient to say that this point is, in my opinion, not sound with respect to the charge of adulteration because the statements in the booklet are, I think, quite clearly within the mischief aimed at, and are not excluded by the language of the act as to adulteration. It is also to be noted that the wording of the first paragraph defining "adulteration" is, "Difference from recognized standards; explanatory statement on or *in* container." (Italics supplied.)

■ There is, however, another objection made by the claimant in answer to this charge of adulteration which is more meritorious, and, in my opinion, sound. This objection is that the statement or claim that the drug is "antiseptic," although in fact not antiseptic, is not within the definition of adulteration as contained in the act. The drug is not sold under a name recognized in the United States Pharmacœpia or National Formulary, and therefore the charge of adulteration, if it can be sustained at all, must fall within the second paragraph of the definition which reads as follows:

"*Below Professed Standard.*—Second. If its strength or purity fall below the professed standard or quality under which it is sold."

The argument on behalf of the government is that the statement by the manufacturer that the article is "antiseptic" *professes a standard of strength* for the article to which it does not conform. But I am unable to accept the view that the use of the word "antiseptic" is a profession of a *standard of strength* within the meaning of the definition. The word "antiseptic" does not of itself convey the idea of any particular strength or degree. The primary

meaning of "antiseptic" is "tending to prevent putrefaction or decay." It is said that the word was in common use long before the bacteriological discoveries of Pasteur and Koch. The word is not equivalent in meaning to the word "germicide"; that is to say, an antiseptic substance is not necessarily one that kills germs. It is probably true that the most common use of the word "antiseptic" is in relation to antiseptic surgery, but the term is, in its dictionary meaning, and I understand also in its scientific meaning, much broader than its special application to antiseptic surgery. And, as I understand it, the word does not import or imply or "profess" any particular standard of strength or quality with respect to germs or bacteria. Different antiseptic substances vary in the degree of their strength or effectiveness in killing or tending to prevent the formation of bacteria, and probably vary also with the conditions and duration of application. Therefore, to say that a substance is "antiseptic" is merely to affirm that it has a *tendency* to prevent putrefaction, decay, or the development or increase of bacteria; and not to affirm any particular potency in connection therewith.

Then again it is to be noted that, to be within the definition, there must be not only a professed standard asserted or implied, but the "strength or purity" of the article must fall below the professed standard. The construction contended for by the government, would, I think, introduce forbidden elements of vagueness and uncertainty into the definition. Small Co. v. American Sugar Refining Co., 267 U. S. 237, 45 S. Ct. 295, 69 L. Ed. 589; Cline v. Frink Dairy Co., 274 U. S. 445, 453, 454, 47 S. Ct. 681, 71 L. Ed. 1146.

Even if the claim that the article is antiseptic when in fact it is not could be brought literally within the wording of the definition, yet, in my opinion, it is clearly not within the intent of the act when we look to the context of the whole definition of the word "adulterated," and also to the structure of the whole Food and Drugs Act. The obvious purpose of Congress in defining the word "adulterated" was to cover cases where a drug recognized in the United States Pharmacœpia or National Formulary is sold under its established name but does not conform to the standard of strength, quality, or purity as determined in that official publication; and when not sold under such an established name, the second paragraph of the definition applies where the manufacturer professes a particu-

lar standard of "strength or purity" to which the article does not conform. In one case the drug fails to conform to its officially recognized standard; in the other to its particular professed standard. If the drug does not profess a particular standard of strength or purity, it is not "adulterated" by reason of a falsely asserted quality, which would be a "misbranding" under the act.

The claim that the drug is "antiseptic" is a profession of *quality* rather than of *strength or purity*. It would at least be inapt to say that the "strength or purity" of a drug "falls below the professed quality" of the drug because "strength" and "purity" are ideas that cannot readily be stated in comparison with or in proportion to "quality"; and it is to be noted that, while the first paragraph of the definition of "adulterated" condemns a drug which falls below the standard of "strength, quality or purity," yet the second paragraph (with which we are concerned) comprehends a case where only the "strength or purity" falls below a professed standard. A simple illustration of the application of this second paragraph of the definition, with respect to purity, is afforded by the well-known instance of an article that is widely advertised as "99⁴⁴⁄₁₀₀% Pure." If, on analysis, such an article proves to be only 90 per cent. pure, it would obviously fall below a professed standard of purity. And so with respect to "strength." If a manufacturer represents that a drug contains 50 per cent. formaldehyde when in fact it contains only 5 per cent., it falls below the professed standard of strength.

Apart from this merely verbal analysis of the definition, I have the conviction that the sense of the definition as a whole excludes its application to the case under consideration. A sentence from the opinion of Justice Holmes, speaking for the Supreme Court of the United States in the case of United States v̇. Johnson, 221 U. S. 488, 496, 31 S. Ct. 627, 55 L. Ed. 823 (construing a clause of the same Act) aptly expresses my view. He there said: "It seems to us that the words used convey to an ear trained to the usages of English speech a different aim; and although the meaning of a sentence is to be felt rather than to be proved, generally, and here, the impression may be strengthened by argument."

Counsel for the government are not able to point to any precedent for similar application of the act, although it has now been in force for 25 years, and it would seem high-ly probable that instances must have heretofore arisen in which a similar application could and should have been made, if justified. The absence of such prior application seems to me to be not without significance in interpreting the true intent of the act.

The claimant's exceptions to the second paragraph of the libel will therefore be sustained.

■ *Misbranding.* The libels allege that the booklet in the carton contains some statements which are (a) *false and misleading,* and other statements which are (b) *false and fraudulent,* and that they both constitute "misbranding" within the definition contained in the act. U. S. Code, title 21, §§ 9 and 10 (21 USCA §§ 9, 10). By section 9 "misbranding" covers, as to drugs, cases where "the package or *label* of which shall *bear* any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be *false or misleading* in any particular" (italics supplied), and in section 10 there are included three additional classes of misbranding, the third of which reads as follows: "If its package or label shall bear or *contain* any statement, design, or device regarding the curative or therapeutic effect of such article or any of the ingredients or substances contained therein, which is *false and fraudulent.*" (Italics supplied.)

It is apparent from this that statements which are *false or misleading* are hit by the act only when the *package or label bears* the statement; but, if the statement is both *false and fraudulent,* it is covered by the act if the package or label bears or *contains* the statement. In this case all the alleged offending statements are contained in the booklet which, as has already been stated, is inclosed within the enveloping carton but is not physically attached thereto, and is not a part of the printed matter on the label on the bottle, although referred to thereon. It is clear enough and is indeed conceded by the claimant, that the word "contain" aptly covers the statements in the booklet, and that therefore statements therein which are false and fraudulent are reached by the act but claimant also contends that the narrower language of section 9 with respect to statements which are only "false or misleading" exclude the consideration of statements in the booklet because the word "bear" is limited to statements which appear on the outside of the package as sold to the customer. If this were a case of first

instance, bearing in mind the obvious and indeed oft-stated beneficent purpose of the act and the mischief it was designed to prevent, I should be inclined to hold that the construction was perhaps unnecessarily narrow, although it must be conceded that the word "bear" is more aptly used with reference to descriptive matter on the package or label than with reference to a non-attached booklet of advertising matter regarding the drug contained within the package. It is, I think, true that false and misleading statements in the booklet are quite as much within the mischief aimed at by the act as statements on the outside of the carton or on the label on the bottle. It is a matter of common knowledge that many proprietary medicines are sold in carton form with booklets or paper wrappers within the carton which give much fuller information regarding· the article than is possible in the limited space provided by the outside of the carton or the label on the bottle. A careful user of articles will read the fuller statements in the booklet and probably rely upon them as much, if not more, than the more condensed reading matter on the outside of the carton or label. Emphasis· is placed by counsel for the claimant on the proposition that the article is bought by the purchaser principally on the strength of the statements appearing on the outside cover of the package, and that it must be supposed that Congress, acting only on the power to regulate interstate commerce, must have intended to limit its regulations to conditions applicable to the sale in the original package, and not to have intended to extend its regulatory power beyond this to the opening of the original package by the purchaser. But certainly this is too narrow a view of the power of Congress. Seven Cases v. United States, 239 U. S. 510, 36 S. Ct. 190, 60 L. Ed. 411, L. R. A. 1916D, 164.

However this may be, I find that the claimant's contention with respect to the construction of the act relating to statements which are merely false or misleading, including the unattached booklet, is supported by authority. The original act became effective June 30, 1906. In 1911 the Circuit Court for the Eastern District of New York held in the case of United States v. American Druggists' Syndicate (C. C.) 186 F. 387, 389, 391, that this section of the act under consideration did not cover false or misleading statements in a separate circular inclosed with the article in the enveloping package. And a similar holding was made

very briefly in the Southern District of Ohio, in United States v. Newton Tea & Spice Co. (D. C.)· in 1920, 275 F. 394, affirmed on other grounds in (C. C. A.) 288 F. 475. In 1911 in the case of United States v. Johnson, 221 U. S. 488, 31 S. Ct. 627, 55 L. Ed. 823 (above cited) the Supreme Court held that this section of the act was aimed at false statements as to the *identity* of the article, possibly including strength, quality, and purity, and not at statements as to curative effects. Promptly thereafter, pursuant to recommendation by President Taft, Congress in 1912 amended what is now section 10 of title 21 of the act by adding the paragraph to cover false and fraudulent statements regarding the curative or therapeutic effect of the article. And the legislative history of the act tends to indicate that the word "contain" in the amendment was inserted by reason at least of existing doubts as to whether a circular or booklet within the carton would otherwise be covered. But still more importantly the Supreme Court in the case of Seven Cases v. United States, 239 U. S. 510, 36 S. Ct. 190, 60 L. Ed. 411, L. R. A. 1916D, 164, speaking by Mr. Justice Hughes (who had written the dissenting opinion in the Johnson Case above cited), at least impliedly approves the limited effect of the word "bear" in the earlier section of the law. At page 515 of 239 U. S., 36 S. Ct. 190, 192, in contrasting the significance of the words "bear" and "contain," he said: "It appears from the legislative history of the act that the word 'contain' was inserted in the amendment to hit precisely the case of circulars or printed matter placed inside the package, and· we think that is the fair import of the provision. Cong. Rec. 62d Cong. 2d Sess. vol. 48, part 11, page 11,322. And the power of Congress manifestly does not depend upon the mere location of the statement accompanying the article, that is, upon the question whether the statement is *on* or *in* the package which is transported in interstate commerce. The further contention that Congress may not deal with the package thus transported in the sense of the immediate container of the article as it is intended for consumption is met by McDermott v. Wisconsin, 228 U. S. 115, 130, 33 S. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984, Ann. Cas. 1915A, 39."

The claimant's contention is that no merely false or misleading statements can be construed as covered by the act, unless they appear on the *outside* of the *package*. And the contention so expressed would seem

to exclude even statements on the label on the bottle contained within the package. It is true that this contention finds support in the dictum rather than in the decision in U. S. v. American Druggists' Syndicate (C. C.) 186 F. 387, 391. But the broad language there used was not necessary to the decision either in that case or in this and finds no support in the Supreme Court cases above referred to. In that case the expressed view that the statements are limited to the *outside* of the package is based largely on the consideration of the wording of other sections of the law, which, in my opinion, are not controlling or even persuasive on the particular point because they relate to different conditions. The sounder rule of construction is to limit the consideration to the language of the particular section, and when so limited, we find that statements on the label of the bottle are expressly included.

I reach the conclusion that in dealing with false or misleading statements the booklet is to be excluded, on the authority of the judicial and legislative history of the act. But, before finishing the discussion on this point, I think some attention may possibly at some later stage of this case be given to the effect, if any, of the legend on the label of the bottle reading as follows: "For full directions and information please read the booklet which accompanies this bottle." The significance, if any, of this notation on the bottle has not been set up in the pleadings or referred to in the written or printed arguments of counsel. As the subject is not covered by the libels as now drawn, it is not before me for consideration at the present time, and I, therefore, express no opinion upon it.

This particular point as to false and misleading statements is set up in paragraph 3 of the libel, and refers to certain statements appearing in the printed booklet as false and misleading, "in that the article falls below the standard of strength set forth in said statement." The claimant also excepts to the sufficiency of this averment on the ground that statements which are only false or misleading are not condemned by the act, unless they relate to the *identity* of the article; and that the statements referred to in the libel do not relate to the *identity* of the article or its constituents, but at most only to its *quality*. In this connection it is to be noted that the Supreme Court in the Johnson Case, speaking by Mr. Justice Holmes, said: "But we are of opinion that

the phrase is aimed not at all possible false statements, but only at such as determine the identity of the article, possibly including its strength, quality, and purity." Justices Hughes, Harlan and Day dissented on the ground that the section also covered false statements of fact as to the curative properties of the article. In the opinion by Mr. Justice Hughes, page 506 of 221 U. S., 31 S. Ct. 627, 631, he says: "I take it to be conceded that misbranding may cover statements as to strength, quality, and purity." In the later case of Seven Cases v. United States, 239 U. S. 510, at page 517, 36 S. Ct. 190, 193, 60 L. Ed. 411, L. R. A. 1916D, 164, Mr. Justice Hughes, writing the opinion for the court, said: "The fact that the amendment is not limited, as was the original statute, to statements regarding identity or composition (United States v. Johnson, 221 U. S. 488, 31 S. Ct. 627, 55 L. Ed. 823), does not mark a constitutional distinction."

As a result of these judicial expressions, it is at least doubtful whether statements merely false or misleading are prohibited by the act if they relate to matters other than identity or composition. But it is unnecessary to decide this point in this case, in view of the conclusion above reached which excludes consideration of the booklet with respect to merely false or misleading statements. The exceptions to the third paragraph of the libels must also be sustained.

■ *False and Fraudulent Claims.* The fourth paragraph alleges that certain statements on the cartons and labels of the bottles and also in the booklet regarding the curative and therapeutic effect of the drug are "false and fraudulent, in this, that the article contains no ingredients or combination of ingredients capable of producing the effects claimed, and that the same were applied to said article knowingly *or in reckless and wanton disregard of their truth or falsity;* so as to represent falsely and fraudulently that the article was in whole or in part composed of or contained medicinal ingredients effective for the diseases and conditions named therein."

The exception to this paragraph is based on the contention that the term "fraudulent" as contained in section 10 of the Code, title 21 (above quoted), means "actual intent to deceive"; and, although the libel alleges the statements are both "false and fraudulent," yet it nevertheless narrows the statutory phrase by the expression "or in reckless and wanton disregard of their truth

or falsity," and that as so narrowed they are not within the act which, as construed by the Supreme Court, requires "an actual intent to deceive," and therefore it is argued that this paragraph of the libel is legally insufficient. On this point the court in the case referred to, Seven Cases v. United States, 239 U. S. 510, 517, 36 S. Ct. 190, 193, 60 L. Ed. 411, L. R. A. 1916D, 164, said: "It was, plainly, to leave no doubt upon this point that the words 'false *and fraudulent*' were used. This phrase must be taken with its accepted legal meaning, and thus it must be found that the statement contained in the package was put there to accompany the goods with actual intent to deceive,—an intent which may be derived from the facts and circumstances, but which must be established."

The point here presented is, I think, a nicety in pleading rather than one of substantial trial importance. The jury in this case would, of course, be instructed that the false and fraudulent statements relied on by the government must be of such character that the jury could infer from them an actual intent to deceive. It is to be noted that the libels do expressly allege that the statements were false and fraudulent (in the language of the statute), and also allege that the false and fraudulent statements made in reckless and wanton disregard of their truth or falsity were effective to represent falsely and fraudulently that the article was "in whole or in part composed of or contained ingredients or medicinal agents effective for the diseases and conditions named therein." The narrow question of pleading thus presented is whether false and fraudulent statements made "in reckless and wanton disregard of their truth or falsity," and with the effect of false and fraudulent representation in fact, are within the act. As said by the Supreme Court, the phrase "false and fraudulent" "must be taken with its accepted legal meaning." The accepted legal meaning of the term "fraudulent" includes false statements made in reckless and wanton disregard of their truth or falsity. Cooper v. Schlesinger, 111 U. S. 148, 4 S. Ct. 360, 28 L. Ed. 382; Lehigh Zinc & Iron Co. v. Bamford, 150 U. S. 665,

14 S. Ct. 219, 37 L. Ed. 1215; 26 C. J. Title "Fraud," § 40, bb, p. 1112. Under this act, libels or informations or indictments similarly worded have been held sufficient, Eleven Gross Packages v. United States, 233 F. 71 (C. C. A. 3rd); Simpson v. United States, 241 F. 841, 843 (C. C. A. 6th); United States v. 23 7/12 Dozen Bottles, 44 F.(2d) 831, 832 (D. C. Conn.), except that the libels in those cases alleged that the false and fraudulent claims were made "knowingly and [instead of 'or'] in reckless and wanton disregard of their truth or falsity." But the approved charge in Eleven Gross Packages v. U. S. (C. C. A.) 233 F. page 74, was: "If you believe from the evidence that any one of the therapeutic claims * * * was false, and was made by the claimant with a reckless and wanton disregard as to whether it was true or false, you may find a verdict for the government." The use of the word "or" instead of "and" in the libels in this case is emphasized as a defect by the claimant. As a matter of pleading, I think it would have been preferable in this case to use "and" instead of "or," in which event the proof would have been sufficient if it had shown the statements were made knowingly and recklessly, etc., or knowingly or recklessly, etc. Clearly, if false and fraudulent statements were made knowingly, which I interpret to mean with knowledge of their false and fraudulent character, there could be no question of the sufficiency of the proof. And likewise the accepted legal meaning of "fraudulent" includes statements not based on knowledge and made with reckless and wanton disregard of their truth or falsity, for statements so made necessarily exclude the idea of good faith or honest belief in the truth of the statements, or any reasonable ground for believing them to be true. See, also, Erwin v. Jackson (C. C. A. 4th) 22 F.(2d) 56, 57; Knickerbocker Merchandising Co. v. United States (C. C. A. 2d) 13 F.(2d) 544, 546; Fidelity & Deposit Co. v. Drovers' State Bank (C. C. A. 8th) 15 F.(2d) 306, 308.

For these reasons, the exceptions to the fourth paragraph of the libel are hereby overruled.