COOPER & Another *v.* SCHLESINGER &. Another.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF OHIO.

Argued March 19th, 1884.—Decided March 31st, 1884.

*Damages—Fraudulent Representations—Trial.*

Where a charge embraces several distinct propositions, a general exception is of no effect if any one of them is correct.

When the issue made up by the pleadings and evidence for the jury is whether one party was induced to enter into the contract in suit by false and fraudulent representations of the other party, and isolated passages from the charge are excepted to, if the charge as a whole and in substance instructs the jury that a statement recklessly made without knowledge of its truth was a false statement knowingly made, within the settled rule, it is sufficient and will be supported.

Where a person is induced by false representations to buy an article at an agreed price, to be delivered on his future order, the measure of damages, in an action to recover for the injury caused by the deceit, is the diminution caused thereby in the market price at the time of delivery.

This was an action at law brought in the Circuit Court of the United States for the Northern District of Ohio, by the

defendants in error, trading as Naylor & Co., against the plain-
tiffs in error, trading as George Cooper & Co. The suit was
brought to recover the sum of $570.56, with interest from
March 5th, 1877, for goods sold, part of which was a quantity
of star spring steel. Cooper & Co. set up, in their answer to
the petition, as a defence, counterclaim and set-off, that the star
spring steel was delivered under a contract between the par-
ties, made in March, 1876, whereby Naylor & Co. agreed to
sell to Cooper & Co. 300 tons of said steel at 5⅝ cents per
pound, the same to be delivered on Cooper & Co.'s order, at
various times in the future; that Naylor & Co. were steel
makers, and Cooper & Co. were steel carriage spring makers;
that the latter had been for a long time using the star spring
steel made by the former; that a change from the use thereof
involved expense and delay, and Cooper & Co. could not com-
pete with others in the business, unless they could purchase the
steel at as low a price as others in the business could; that
Naylor & Co. knew all this, and the contract was made with
reference thereto; that, in order to induce Cooper & Co. to
purchase the 300 tons of steel, Naylor & Co., by their agent,
falsely and fraudulently represented to Cooper & Co. that the
condition of their furnaces and business was such that they
could not make and sell during 1876, exclusively of the amounts
already ordered by their customers, more than 600 tons of such
steel, including the 300 tons which they then requested Cooper
& Co. to purchase, and such that they could not make or sell
during 1876, exclusively of the amounts already ordered by
their customers, more than 300 tons of such steel to makers of
carriage springs, to wit, the 300 tons which they then requested
Cooper & Co. to purchase, and which the latter then did so
agree to purchase; that it was a part of the contract, and Nay-
lor and Co. agreed, that they would not make and sell during
1876, exclusively of the amount already ordered by their cus-
tomers, more than 600 tons of such steel, including the amount
so contracted to be sold to Cooper & Co., and would not make
and sell during 1876, exclusively of the amounts already or-
dered by their customers any star spring steel to makers of
carriage springs; that each and all of said representations

were false, fraudulent and untrue, and that Naylor & Co. and said agent made the same knowing them to be false, fraudulent and untrue, and for the purpose and with the intent of inducing Cooper & Co. to make said contract and purchase said 300 tons of steel at a price in excess of the then and future market price of such steel; that Cooper & Co. believed and relied upon said representations, and in such belief and reliance entered into said contract; that said price was in excess of the then price of steel, and so continued to be during the whole time of the delivery of the steel; that the condition of the furnaces and business of Naylor & Co. was not in any respect as so represented, but, as Naylor & Co. and said agent well knew, said condition was such that they could make and sell large quantities of such steel during 1876 in addition to said 600 tons and said amounts so ordered, and could make and sell to makers of carriage springs large quantities of such steel in addition to said 300 tons and said amounts so ordered, during 1876; that, during 1876, Naylor & Co. did make and sell large quantities of such steel, in addition to said 600 tons and said amounts so ordered, and did make and sell large quantities of such steel to makers of carriage springs, in addition to said 300 tons and said amounts so ordered; that during 1876 Naylor & Co. delivered to Cooper & Co. under said contract, and at various times, 572,900 pounds of such steel, for all of which Cooper & Co. paid at the price of 5⅜ cents per pound, as agreed, and Naylor & Co. also delivered to them the steel embraced in the petition, and not paid for; that by such acts of Naylor & Co. the market price of such steel and of carriage springs was largely decreased, and during 1876 Cooper & Co. were compelled to and did pay for all the steel delivered to them under said contract a price greater than the market price and a price greater than such steel was sold for by Naylor & Co. to others and to other makers of carriage springs, and were unable to compete with other makers of carriage springs, to their damage $6,000; and that they claim as a set-off so much of the $6,000 as is equal to the claim of Naylor & Co., and ask for judgment for the remainder.   There was a reply denying the material allegations of the answer and counterclaim.   The case was tried by a jury

and resulted in a verdict for Naylor & Co. for $667.27; on which there was a judgment for that amount, with costs. Cooper & Co. sued out this writ of error.

*Mr. Henry E. Davis* (*Mr. Albert G. Riddle* was with him), for plaintiff in error, cited, as to the false representations, *Williamson* v. *Allison,* 2 East, 446 ; *Frenzel* v. *Miller,* 37 Ind. 1, 17 ; *Litchfield* v. *Hutchinson,* 117 Mass. 195 ; *Sharp* v. *Mayor,* 40 Barb. (N. Y.), 256, 269 ; *Smith* v. *Richards,* 13 Pet. 26, 36–7 ; *Smith* v. *Babcock,* 2 Woodb. & M. 246 ; *Harding* v. *Randall,* 15 Me. 332 ; *Hazard* v. *Irwin,* 19 Pick. 95, 108–9 ; *Craig* v. *Ward,* 36 Barb. (N. Y.), 377, 385 ; *Bankhead* v. *Alloway,* 6 Cold. (Tenn.), 56 ; *Fisher* v. *Mellen,* 103 Mass. 503 ; *Wilcox* v. *Iowa University,* 32 Iowa, 367 ; *Graves* v. *Lebanon Bank,* 10 Bush (Ky.), 23 ; *Foard* v. *McComb,* 12 Bush (Ky.), 723. And as to the measure of damages, Field on Damages, § 707 ; *Crater* v. *Bininger,* 33 N. J. L. 513 ; Sedgwick on Damages, 88, 160 ; *Masterton* v. *Mayor,* 7 Hill, 61 ; *Abbott* v. *Gatch,* 13 Md. 314 ; *Parringer* v. *Thorburn,* 34 N. Y. 634 ; *Milburn* v. *Belloni,* 39 N. Y. 53 ; *Booth* v. *Spuyten Duyvil Rolling Mill Company,* 60 N. Y. 487 ; *Thompson* v. *Burgey,* 36 Penn. St. 403 ; *Cline* v. *Myers,* 64 Ind. 304 ; *Murray* v. *Jennings,* 42 Conn. 9 ; *Thompson* v. *Burgey, ubi supra ; Stetson* v. *Croskey,* 52 Penn. St. 230 ; *Nye* v. *Iowa City Works,* 51 Iowa, 129 ; *White* v. *Smith,* 54 Iowa, 233 ; *Mason* v. *Raplee,* 66 Barb. 180 ; *Drew* v. *Beall,* 62 Ill. 164 ; *Cline* v. *Myers, ubi supra ; Page* v. *Wells,* 37 Mich. 415 ; *Morse* v. *Hutchins,* 102 Mass. 439 ; *Morris* v. *Parham,* 4 Phil. (Penn.), 62 ; *Morrison* v. *Lovejoy,* 6 Minn. 319 ; *Clifford* v. *Richardson,* 18 Vt. 620 ; *Moorehead* v. *Hyde,* 38 Iowa, 382.

*Mr. H. L. Terrell* for defendants in error submitted on his brief.

Mr. Justice Blatchford delivered the opinion of the court. After reciting the foregoing facts he continued :

The only exceptions presented by the bill of exceptions are to the charge of the court to the jury. The entire charge is set out. There is a general exception by the defendants to the

charge, but that is of no avail. Where a charge embraces several distinct propositions, a general exception is of no effect if any one of them is correct. *Lincoln* v. *Claflin*, 7 Wall. 132, 139. The defendants did except, however, to the four distinct parts of the charge which are below put in brackets, and they also excepted generally to the rule given as to the measure of damages. They did not ask for any specific instructions. The court said in its charge:

"It is not necessary, to constitute a fraud, that a man who makes a false statement, should know precisely that it is false. It is enough if it be false, and if it be made recklessly, and without an honest belief in its truth, or without reasonable ground for believing it to be true, and be made deliberately and in such a way as to give the person to whom it is made reasonable ground for supposing that it was meant to be acted upon, and has been acted upon by him accordingly. It is important that this party knew, or had reason to know, that the representations he was making at the time were false, so as to make an element constituting a fraud that would entitle a party like the defendants to maintain a suit upon it. . . . A false representation does not amount to a fraud in law, unless it be made with a fraudulent intent. There is, however, a fraudulent intent if a man, either with a view of benefiting himself, or misleading another into a course of action, makes a representation which he knows to be false or which he does not believe to be true. . . . It is not every misrepresentation in the making of a contract that constitutes a fraud upon which a party may rely to set aside the binding obligation of the contract. The misrepresentation must be in relation to a fact or a state of facts which is material to the transaction, and the determining ground of the transaction. There must be the assertion of a fact on which the person entering into the transaction relied, and in the absence of which. it is reasonable to infer that he would not have entered into it, or at least not on the same terms. Both facts must concur. There must be a false and a material representation, and the party seeking relief should have acted upon the faith and credit of such representation. . . . [A representation, to be material, should be in respect of an existing and ascertainable. fact, as distinguished

from a mere matter of opinion or advice.] In many of these trading transactions there is a system of misrepresentation in regard to the value of property, and several other things that sometimes enter into a contract, that does not constitute representations of existing facts, but simply the opinion or advice of the party that makes the representations ; and that class of representations does not constitute and lay a foundation for the maintenance of an action of fraud. [It must be a representation of existing facts that turn out to be false and that the party at the time knew to be false.] These are general principles that you are to look into in order to ascertain, in the light of the evidence, whether the defendants in this action have been able to substantiate, by a fair preponderance of proof on their side, taking all the evidence together, that these representations were of this character—that they were false, that the party knew them to be false, and that they were made for the purpose and with the intent of defrauding this party at the time they were made, these all constituting elements necessary to be made in order to maintain this sort of an action."

The court then passed to the question of damages, and said :

"It is claimed on behalf of the defendants, that their measure of recovery is the reduced market price of the steel before and at the time of the delivery of the respective quantities of steel that were to be delivered by the terms of the contract. It seems that the steel was to be delivered at different times, on the order of the defendants, as they might want the steel. On the other hand, it is claimed by the plaintiffs that the measure of damages is simply the market value of the steel at the time when this contract for the purchase of the 300 tons was made. [The general rule for an action of that kind, and for a fraud of that kind, would be the difference between the agreed price that was procured by fraudulent representations, and the market price of the article purchased, at the time when the sale was made] ; for, if the property was of the value that was agreed to be paid at the time, then there was no fraud perpetrated as to the price which was agreed to be paid for the steel, growing out of any representations in relation to it. But these representations are of a peculiar nature. It is said that the representation was, that these

parties had but three hundred tons of steel to be put upon the market during the year for the purpose of being manufactured into springs, and that they had but six hundred tons of steel to be put upon the market during the whole year for all purposes. Now, I direct you that if this representation was false, and these parties did go and place upon the market greater quantities of steel than they said in their representations they had, then, to whatever extent the placing of that quantity of steel would have reduced the market price of steel, the defendants in this action would be entitled to recover. [But they would not be entitled to recover a reduction in the price and value of steel occasioned by other things over which the plaintiffs in this suit had no control, and not growing out of the fact that these plaintiffs did, contrary to the representations and statements of this agent, place upon the market a greater quantity of steel.] Look into the evidence and see whether the fact that these parties did put eight or nine hundred tons, as claimed by the defendants, upon the market, affected the market price of the steel ; for, if a party may be induced by false representations to make a purchase of a quantity of goods at a certain time, and does not pay any more than the market price for them, then he takes the risk of the falling of the price of the article at the time when it is delivered, and the contract price fixes the amount to be paid, at the time when the contract is made, and not at the time of the delivery of the goods. If, in this case, the defendants were to pay the contract price at the delivery, then, of course, that would be another question ; but they agree by this contract to fix a price which they shall pay for the whole three hundred tons, to be delivered as they might direct. If these representations were false, and these parties did, contrary to the representations, place upon the market this increased quantity of steel, and that affected the market, then to the extent of that affectation of the market these defendants would be entitled to recover from the plaintiff their damages."

In the first two sentences excepted to, the court was dealing with the subject of the representations as to existing facts. The answer alleges that the representations were false and fraudulent, and that Naylor & Co. and their agent made them knowing them to be false, fraudulent and untrue, and for the purpose of inducing Cooper & Co. to make the contract at the

alleged excessive price, and knew the condition of their furnaces and business to be the opposite of that represented. So far as the cause of action on the part of Cooper & Co. is based on representations of the condition of the furnaces and business of Naylor & Co. with reference to the quantity of steel they had facilities for making in 1876, such cause of action is set forth as one founded on knowledge of the falsity of the representations. Taking the two sentences excepted to in connection with the rest of the charge, the jury were properly instructed, that a statement recklessly made, without knowledge of its truth, was a false statement knowingly made, within the settled rule. In the charge on this branch of the case we see no error.

As to so much of the answer as set forth a contract by Naylor & Co. not to do certain things in the future, and a breach thereof and a claim of damages therefor, if there be such a separable cause of action set up, it is sufficient to say that there is no exception to any part of the charge which may be supposed to be addressed to such a question, and the case was, as to the entire claim of the defendants, properly presented to the jury. The plaintiffs were not responsible for any reduction in price or value occasioned by other causes than their putting on the market more steel than the quantity agreed upon.

As to the rule of damages, the court, after setting forth the general rule correctly, stated the rule applicable to the special circumstances of this case; and we understand that rule to have been substantially given as claimed by the defendants. It was, that where a person is induced by false representations to buy an article, at an agreed price, to be delivered on his future order, he can recover, as damages for the deceit, the diminution caused thereby in the market price at the time of delivery. The instruction as claimed by the defendants having been given, they cannot complain of it.

There being no error in the record,

*The judgment is affirmed.*