## IRON CITY TOOLWORKS, Limited, v. WELISCH.

(Circuit Court of Appeals, Third Circuit. February 17, 1904.)

### No. 48.

1. SALES—PATENTED ARTICLES—AGREEMENT TO MANUFACTURE—DELIVERY—DAMAGES—LOSS OF PROFITS.

In an action for breach of a contract to manufacture and deliver to plaintiff patented picks intended for sale to Alaska miners, by reason of defendant's failure to deliver the same as agreed, no element of loss of profits could be considered in the computation of damages which was uncertain, speculative, and not clearly and unqualifiedly proved.

2. SAME—EVIDENCE.

In an action to recover for breach of defendant's contract to manufacture and deliver patented picks to plaintiff, which he intended to sell to Alaska miners, evidence of anticipated profits, based on plaintiff's sale of a sample pick or picks to a miner, which had been made in a blacksmith shop, at retail, before the making of the contract, and as to his opinion concerning the market for the same had they been delivered as agreed, was inadmissible, as too remote and speculative.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Wm. R. Blair, for plaintiff in error.

Wm. B. Rodgers, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and McPHERSON, District Judge.

GRAY, Circuit Judge. In the court below, Welisch, the defendant in error, was plaintiff, and the Iron City Toolworks, Limited, the plaintiff in error, was defendant. The action was one of assumpsit, brought by plaintiff against the defendant, to recover damages alleged to have resulted from a breach of contract between the plaintiff, a citizen of the state of California, and the defendant, a partnership association existing under the laws of the state of Pennsylvania, doing business at Pittsburg in that state. The facts disclosed by the record, so far as they are pertinent to the question before us, are as follows:

The original contract between the parties was in writing, dated June 25, 1900, and therein the defendant, for the consideration mentioned, undertook to manufacture for the plaintiff one thousand pickeyes and ten thousand picks, to be shipped not later than ninety days from date to the plaintiff, in California. One hundred dollars was paid in cash, and $2,700 deposited in escrow in a Pittsburg bank. The pick was

of a certain kind, for which the plaintiff had, in 1892, obtained letters patent. It was called an adjustable pick; that is, the arms or points of the pick are detachable from the central part, or the pickeye, into, which the handle is inserted. Delivery was not made by defendant, in accordance with the contract, at the expiration of 90 days, but a sample pickeye, with points to match, was shipped to and received by the plaintiff in California. The plaintiff objected that the adjustable parts of the sample did not fit, but he kept the same in his own possession, until November 25, 1900, when he visited the defendant in Pittsburg, and agreed that defendant should go on and complete the order, one half of the picks to be delivered in December, 1900, and the other half in January, 1901, neither party waiving any rights he then had. Defendant failed to furnish the picks within the time thus extended, and, on February 2, 1901, the suit was brought in the court below. The trial resulted in a verdict and judgment in favor of the plaintiff, for $2,750. The plaintiff in error has filed here 14 assignments of error to the admission of testimony and to the charge of the court.

The main question, however, underlying them all, and with which we are here alone concerned, is, whether the plaintiff was entitled to recover as damages, alleged profits which he claimed he might have realized but for the breach of contract on the part of the defendant. Over the objection of the defendant, the plaintiff was allowed to testify, as follows:

"Q. Were picks of this kind in demand for the purpose of the Alaska mining operations? A. Yes, sir. Q. Well, was that a large demand, or not? A. Well, it is the most practical pick. Of course we don't all agree upon that point, but this new pick in comparison with the old pick is as a breach loading gun would be to a muzzle loading gun. Q. State whether there was a demand for picks of this character such as this. A. There was a demand for picks, and the better the pick the more demand for them. * * * Q. Well, Mr. Welisch, would you have been able to have sold these picks if they had been delivered in the season of 1900? A. Why, yes, sir. * * * Q. Mr. Welisch, at what profit could you have sold these goods if they had been delivered according to contract? A. I have not had a direct offer because I had nothing to deliver as far as the jobbing of it was concerned. Retail, I was offered five dollars a pick by a miner going out, that is a pick and two points. That was retail. They offered to me to take along and so save weight and time."

This testimony is somewhat indefinite, but, as plaintiff afterwards testifies that this was in San Diego, where he was then in the clothing business, and that he removed to San Francisco in May, 1900, we must assume that this was prior to that month, and therefore prior to the making of the contract in question; and further, that the pick or picks that were sold to a single miner, were of the sample picks which he testified to having had made by a local blacksmith. The plaintiff further testified that, in May, 1900, he sold out his men's furnishing and clothing business, in the city of San Diego, Cal., and removed to the city of San Francisco; that at the time of the making of the, contract with the defendant, there was a great excitement over the discovery of gold in Alaska, and that 40,000 miners went to Alaska during that season, and that there was a great demand for picks. Upon this testimony of the plaintiff himself, as to what profits he believed he might have made, had the contract been fulfilled according to its terms, the learned judge of the court below charged, as follows:

"It will be for you to determine whether there was a breach of this contract, whether there was any delivery here of the subject-matter of this contract within the extended time, within the two months. If you find upon those questions in favor of the plaintiff, you will then be confronted with the question of damages. This article, the subject-matter of this written contract, was not an article upon the general market; that is to say, the plaintiff could not go into the general market and buy these picks. It was a patented article. If it had been an ordinary article of commerce, such as flour, coal, or ores, or any manufactured article in common use and common sale, the market value would be the standard to which the jury would resort in settling damages, but this article was not upon the general market, it was a patented pick, and therefore I charge you that in view of the subject-matter of this contract, and looking at all the circumstances surrounding the transaction as testified by both sides, that the measure of damages here is the actual loss the plaintiff sustained by the defendant's breach. * * * Under the evidence in this case, you will determine what the plaintiff could have sold these picks for if they had been delivered to him in accordance with the terms of his contract. You will remember that the delivery under the written contract was to take place within ninety days, not later than the 23d or 24th of September, and you will not fail to observe that if the plaintiff's version of the extension of the agreement is correct, and upon that subject the letter here speaks, his rights under the written contract were preserved, 'neither party waiving any rights he now has,' so that if the terms of the extension agreement were not complied with by the defendant, the plaintiff had a right and has a right to fall back upon any breach that occurred on the original contract, and you will ascertain from the evidence what his loss, what his actual loss, was by reason of the failure of the defendant company to furnish these picks. The law in a case of this kind seeks, as far as is humanly possible, to give compensation to one who has been aggrieved by a breach of contract, pecuniary compensation, and in accordance with that principle of law I have instructed you, and I now repeat the instruction, that the true measure of damages here, the just and legal measure of damages. is the actual loss which the plaintiff sustained by reason of the failure to deliver these picks for the purpose for which they were intended. You have the testimony of the plaintiff as to the demand and as to what he was offered for these picks, and you have in the order figures by which, it seems to me, you may arrive at the actual loss he sustained if you find in his favor."

The learned judge stated to the jury that the true measure of damages here, was the actual loss which the plaintiff sustained by reason of the failure to deliver these picks for the purpose for which they were intended. This, as a broad statement of the general rule, is quite correct. The difficult question is, what are the elements of this "actual loss," which is to be the measure of damage in a given case? or, in this case, how far are expected profits, or profits which plaintiff claims might have been realized but for the breach of contract by the defendant, such an element? No element of loss can be considered in the computation of damages, that is not clearly and unqualifiedly proved, and for this reason, the general rule, correctly stated by the learned judge in his charge, has always excluded proof of uncertain or speculative profits. So, where there is no market price for an article, damages cannot be computed upon the belief of plaintiff, or other witnesses, whether more or less probable, that the commodity contracted for, and not delivered, could have been sold for a certain price. Such evidence has not the degree of certainty required by the law, and the hardship that may in particular cases accrue to individual plaintiffs by the exclusion of such testimony, must be weighed against the greater hardship and inconvenience that would result in the administration of justice from the admission of testimony of so vague and indefi-

nite a character. An exception to the general rule, excluding expected profits as a basis for the computation of damages, or perhaps it would be better called a modification of its application, is found in cases where the failure of the defendant to deliver, has at least deprived the plaintiff of the benefit of a definite contract which he has made in reliance on the fulfillment of his contract with the defendant. The doctrine in this regard is clearly stated in Western Union Telegraph Company v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479, as follows:

"It has been well settled since the decision in Masterton v. The Mayor of Brooklyn, 7 Hill, 61 [42 Am. Dec. 38], that a plaintiff may rightfully recover a loss of profits as a part of the damages for breach of a special contract, but in such a case the profits to be recovered must be such as would have accrued and grown out of the contract itself as the direct and immediate result of its fulfillment. In the language of the Supreme Judicial Court of Massachusetts, in Fox v. Harding, 7 Cush. 516: 'These are part and parcel of the contract itself, and must have been in the contemplation of the parties when the agreement was entered into. But if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit.' Page 522."

In Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 205, 11 Sup. Ct. 503, 35 L. Ed. 147, Mr. Justice Lamar, in delivering the opinion of the court, says:

"The authorities both in the United States and England are agreed that, as a general rule, subject to certain well-established qualifications, the anticipated profits prevented by the breach of a contract are not recoverable in the way of damages for such breach; but in the application of this principle the same uniformity in the decisions does not exist. In some cases of almost exact analogy, in the facts, the adjudications of the courts in the different states are directly opposite. The grounds upon which the general rule of excluding profits, in estimating damages, rests, are (1) that in the greater number of cases such expected profits are too dependent upon numerous, uncertain and changing contingencies to constitute a definite and trustworthy measure of actual damages; (2) because such loss of profits is ordinarily remote and not, as a matter of course, the direct and immediate result of the nonfulfillment of the contract; (3) and because most frequently the engagement to pay such loss of profits, in case of default in the performance, is not a part of the contract itself, nor can it be implied from its nature and terms."

In that case, it was decided that evidence as to the profits expected to be derived from the sale of flour, which plaintiffs would have manufactured had defendants furnished the machinery for doing so, according to contract, could not be admitted. Such losses were, in the opinion of the court, "rather remote and speculative than direct and immediate results from the breach alleged."

We think that, by the great weight of authority, the testimony as to what profits the plaintiff might have made by the sale of these picks, had they been delivered according to their contract, should be excluded as too remote and uncertain to form the basis of a finding of damages. And this too, even if the testimony as to such anticipated profits had been more certain and precise than it was. As it is, the evidence is wholly confined to the testimony of the plaintiff himself, who testifies merely as to his opinion and belief, stating no fact except the one so vaguely testified to, of his sale of a sample pick or picks to a miner, prior to the making of the contract. As plaintiff himself says, this

was a retail, and not a jobbing, sale, and it would be manifestly unjust to make it the criterion of the price the plaintiff would have received for the whole number of picks contracted for, had they been delivered. What the cost and expense to the plaintiff would be, in making the sale of these picks, is not alluded to. No facts are adduced in support of plaintiff's opinion. It is hard to imagine a case where profits could be more justly characterized as speculative and uncertain.

We are of opinion that the learned judge in the court below erred in submitting to the jury, as a basis for their computation of damage, the question of what profits the plaintiff might have gained by the sale of the picks, had they been delivered to him by defendant, according to contract.

For this reason, the judgment below must be reversed, and a venire de novo awarded.