## BELL *v*. FRITTS.

### Opinion delivered December 10, 1923.

1. FRAUD—FRAUDULENT REPRESENTATIONS—VALUE OF STOCK.—False statements made of material facts relating to the property or condition of a corporation, which necessarily affect the value of its stock, are not mere expressions of opinion upon which a purchaser of such stock has no right to rely, but constitute fraud if thereby one is induced to buy such stock.

2. FRAUD—SCIENTER.—In an action for damages for fraudulent representation in the sale of bank stock, it was not necessary to show that misrepresentations were knowingly made; it is enough for plaintiff to show that defendant asserted them to be true of his personal knowledge, that he made them with intent to have plaintiff act upon them to his injury, and that they had that effect.

3. FRAUD—EVIDENCE.—In an action for damages for fraudulent representation, evidence *held* to sustain a finding against defendant.

4. FRAUD—EVIDENCE OF KNOWLEDGE.—In an action against a bank president for damages for fraudulent representations in the sale of bank stock admission of testimony that, prior to the sale, the bank had allowed another bank to protest two checks of a depositor, who had funds on deposit to pay same, and that this irregularity was called to defendant's attention at the time, *held* admissible as tending to prove that defendant knew that something was wrong with the management of the bank.

5. FRAUD—EVIDENCE OF KNOWLEDGE.—In an action against a bank president for damages arising from his fraudulent representations in the sale of bank stock, testimony that, after the failure of the bank, defendant told a witness that he had tried to keep matters quiet so that they could arrange the affairs of the bank so that everything would be all right, *held* admissible as tending to show that defendant knew the condition of the bank at the time he sold the stock to plaintiff.

Appeal from Madison Circuit Court; *W. A. Dickson*, Judge; affirmed.

*Combs & Combs* and *Sullins & Ivie*, for appellant.

Before representations will be considered fraudulent in law, so as to give a right of action, they must be made relative to a matter susceptible of accurate knowledge, must be a statement importing knowledge on the part of the persons making them. 95 Ark. 375; 99 Ark. 438; 97 Ark. 268. Appellee, having been a director of the

bank for four years, is chargeable with knowledge of conditions and the value of the stock,. and thereby waived his right of action herein. 180 S. ;W. 754. No one can be held liable for a false representation who honestly believed it when made, however false it may be, but he is liable if he knew it to be false, qr, knowing nothing about it, asserted it to be true. 97 Ark. 15. Appellant honestly believed that he had made a correct statement of the value of the stock, as only a short time before he had paid nearly as much for $1,500 of the stock. His statement therefore was a mere expression of opinion, and not actionable. 82 S. W. 433.

.*John Mayes* and *H. L. Pearson*, for appellee.

Appellant had information that there was something wrong with the bank. He asserted the value of the stock, and that the bank was in good condition, representations upon which appellee relied to his injury, and he is therefore entitled to recover. 101 Ark. 95; 95 Ark. 375. The representations were made with the intent to have appellee act upon them. 99 Ark. 438. The representation was fraudulent, whether he knew the statement to be untrue or not. 152 Ark. 135. Where the seller has peculiar means of knowing the truth of his assertions, the buyer may rely upon them. 99 Ark. 438; 12 R. C. L., p. 337.

HUMPHREYS, J. This is an appeal from a judgment in the sum of $250 rendered against appellant in favor of appellee, in the circuit court of Madison County, in a suit between them wherein appellee claimed damages in the sum of $1,160 on account of an alleged fraudulent sale of $400 of stock in the Bank of Richland to him by appellant. He alleged he was induced to buy and pay $1,160 for the stock, upon false and fraudulent representations made by appellant, to the effect that the value of the stock was $1.90 on the dollar, or ninety cents above par; that the stock earned a dividend of 36 per cent. on the dollar during the year 1919; that it would

earn a dividend of 40 per cent. during 1920; and that said bank was in good condition.

Appellant filed an answer denying the allegations of false and fraudulent representations.

The cause was submitted, and, at the close of appellee's testimony, appellant moved for an instructed verdict in his favor, which was refused by the court. The refusal of the court to peremptorily instruct the jury as requested is urged as reversible error. In other words, it is contended that, under the law applicable in the case, the proof is insufficient to support the verdict and judgment.

The general rules of law applicable in cases of this character were well expressed by Mr. Justice FRAUENTHAL in the case of *Hunt* v. *Davis,* 98 Ark. 44, in the following words:

"If a representation is made by the seller which he knows to be false, it will constitute fraud, but a representation will also be fraudulent, even if he had no knowledge whatever, if it is made of a matter as truth of personal knowledge. *Cooper* v. *Schlesinger,* 111 U. S. 148; *Kountze* v. *Kennedy,* 147 N. Y. 124; *Cole* v. *Cassidy,* 138 Mass. 437.

\* \* \* \*

"While, ordinarily, statements of the value of property are mere expressions of opinion upon which a purchaser is not entitled to rely, yet statements of fact which affect the value of the property, if false and made for the purpose of inducing the purchaser to rely thereon, are false representations, which will constitute fraud in law. False statements made of material facts relative to the property or condition of a corporation which necessarily affect the value of the stock of such corporation are not mere expressions of opinion upon which a purchaser of such stock has no right to rely, but they are representations which will constitute fraud if by means of such misrepresentations the purchaser has been

induced to buy such stock. Clark & Marshall, Private Corp. § 616b; 20 Cyc. 60.''

Appellant seeks to avoid the application of these principles of law in the instant case, for the alleged reason that the representations were mere expressions of opinion, made in good faith.

Relative to the question of good faith there is testimony in the record from which the jury might have reasonably inferred that, at the time of the sale of the stock by appellant to appellee, he knew the bank was not in good condition and that it had not really earned a dividend of 36 per cent. during the year of 1919, viz.: the persistence with which appellant pressed the sale, the fact that he was a director and president of the bank, the short time after the sale of the stock until the failure of the bank, the extent of the insolvency of the bank when it did fail, and the irregularities in the conduct of the business.

Bearing upon the question of appellant's good faith, appellee testified that he admitted to him, after the failure, that his son, Alfred Bell, who had worked in the bank during the years 1917 and 1918, told him that something was wrong with the bank, and advised him to get out. However, under the rules of law announced above, it was not necessary for appellee, in order to prevail in his case, to show that the misrepresentations were knowingly made. It was enough for him to show that appellant asserted the misrepresentations to be true of his personal knowledge; that he made them with intent to have appellee act upon them to his injury, and that they had that effect.

On the 10th day of February, 1921, when appellant sold appellee the stock, he was a director and president of the bank, or had been for several years. Appellee had owned one hundred dollars of the stock for about four years, but had never been a director or officer in the bank. Appellant's son, Alfred Bell, who was a stockholder, worked as bookkeeper for the bank for about

six months during the years 1917 and 1918, and after that, a day or so at a time, whenever the cashier was away. The bank was small. Its capital stock was $10,000, and only $6,200 of the stock had been subscribed. The cashier wrecked the bank by withdrawing the funds in excess of the subscribed capital stock for the purpose of speculation. These withdrawals were for considerable sums, at intervals covering a part of a year or more prior to the failure. The bank failed, and was taken over by the Bank Commissioner of Arkansas on April 27, 1920, a little over two months after the sale of the stock by appellant to appellee. After assessing 100 per cent. against the stockholders, only enough was realized out of the assets to pay the creditors seventy cents on the dollar.

With reference to the sale and purchase of the stock, appellee testified, in substance, that appellant tried to sell him the stock on six or seven occasions; that on or about the 10th day of February, 1920, he stopped at appellant's home and found him in conversation with Henry Ware; that he sent his little boy in the house for a certificate of deposit of $20 representing a part of the 36 per cent. dividend which had been declared on the $100 certificate of stock owned by him (appellee); that he handed him the deposit slip and remarked, "You see what the stock earned last year;" that the dividends declared in prior years had all been placed in the stockholder's surplus; that on prior occasions, when trying to sell him stock, appellant had said to him that the bank would have to have a vice-president; that he then proposed to sell him, appellee, $400 and Henry Ware $500 of stock owned by him, at $1.90, stating that it was worth $1.95 on the dollar; that it had earned 36 per cent. during the year 1919 and would earn 40 per cent. during the year 1920; that the only reason it did not earn 40 per cent. during the year 1919 was because they had declared a dividend before all the interest due the bank had been collected; that the bank was in good condition;

that the bank was insured against everything that a bank could be insured against; and that Earl Hill, the cashier, was under bond for good behavior; that if they bought the stock the bank would elect him (appellee) a director and Harry Ware vice-president; that he would stand behind the stock for a year if they would agree to give him all over 8 per cent. the stock earned; that, in reliance upon appellant's statement that the bank was in good condition and that the stock was gilt-edge and of the value of $1.90 on the dollar, he paid appellant $760 for a $400 certificate of stock, and, when the bank failed, was required to pay the 100 per cent. assessment thereon, or an additional $400 to the Bank Commissioner, making a total of $1,160 he was out on the purchase of the stock. The testimony given by appellant was corroborated in the main by that of Harry Ware, and by a number of circumstances in the case.

The testimony introduced by appellant contradicted that introduced by appellee at the salient points, but it is unnecessary to detail the substance thereof, as the question to be determined by this court on appeal is whether there was any substantial evidence of a legal nature to support the verdict. The testimony, set out in substance above, which was introduced by appellee, is ample to support the verdict and judgment upon the theory that, to entitle appellee to recover, it was only necessary for him to show that appellant misrepresented the financial condition of the bank and value of the stock to him, with intent to induce him to purchase same to his injury, and that it had that effect, even though ignorant of the condition of the bank and the value of the stock at the time he made the representation. The issue as to whether appellant misrepresented the condition of the bank and the value of the stock with such intent, was submitted to the jury under correct declarations of law.

Appellant makes the further contention that the court erred in giving instructions Nos. 6 and 7, upon the ground that they were abstract. Proof was intro-

duced tending to show the solvency or insolvency of the bank on the day the stock was sold, and so instruction No. 6 was not abstract, as it related to that issue in the case. Proof was also introduced pro and con as to whether appellant had knowledge of the bank's insolvency at the time of the alleged sale, gained from other sources than the bank's records, and, as instruction No. 7 related to that feature of the case, it was not abstract.

Appellant's next insistence for a reversal of the judgment is that the court erred in admitting the testimony of Joe Goolsby, to the effect that, prior to the sale of the stock, the Bank of Richland had allowed the St. Louis clearing-house to protest two of his checks when he had money on deposit in said bank with which to pay the checks. This irregularity in the conduct of the business by the cashier was called to the attention of appellant at the time, and we think it admissible as a circumstance tending to show that he knew something was wrong with the management of the bank.

Appellant's next and last insistence for a reversal of the judgment is that the court erred in admitting the testimony of Green McCoy, to the effect that, after the failure of the bank, Mr. Bell told him that he had tried to keep Mr. Hall quiet so that they could arrange the affairs of the bank so that everything would be all right. We think this testimony is also admissible as a circumstance tending to show appellant's knowledge of conditions that existed in the bank at the time he disposed of the stock in question.

No error appearing, the judgment is affirmed.