## ERWIN et al. v. JACKSON.

Circuit Court of Appeals, Fourth Circuit.
October 18, 1927.

### No. 2627.

1. Fraud ⬩13(2)—Purchasers of stock in manufacturing company, not relying on seller's innocent representation, cannot recover amount improperly carried as account receivable.

Where purchasers of stock in certain manufacturing company did not rely on innocent representation of seller as to financial statement, nor did seller have knowledge of bookkeeping methods which purchasers alleged improperly carried item as account receivable, nor did purchasers suffer injury in reliance on representation of seller, seller is not liable for such mistake, if any, in bookkeeping methods.

2. Fraud ⬩20—Purchasers concluding transaction after knowledge amounts were improperly carried as accounts receivable waived right to hold seller liable.

Where purchasers of corporate stock under option completed transaction after having knowledge that certain sum was improperly carried on corporation's books as account receivable, they waived any possible right to hold seller liable, since, even though there was fraudulent misrepresentation, the act of proceeding with full knowledge of facts would have legal effect of condoning fraud.

In Error to the District Court of the United States for the Western District of North Carolina, at Charlotte; Edwin Y. Webb, Judge.

Suit by J. H. Erwin and another against H. W. Jackson, removed from state court. Judgment for defendant, and plaintiffs bring error. Affirmed.

Walter Clark, of Charlotte, N. C. (James A. Lockhart, of Charlotte, N. C., on the brief), for plaintiffs in error.

C. W. Tillett and T. C. Guthrie, both of Charlotte, N. C., for defendant in error.

Before NORTHCOTT, Circuit Judge, and SOPER and ERNEST F. COCHRAN, District Judges.

NORTHCOTT, Circuit Judge. In January, 1923, the defendant in error, who was also the defendant below, and will be referred to here as the defendant, H. W. Jackson, was a stockholder and a director in two corporations owning woolen mills, located in North Carolina. They were the Franklinville Manufacturing Company and the Randolph Manufacturing Company. Defendant was a banker and lived in Richmond, Va. At that time negotiations were opened for the sale by Jackson to one J. H. Erwin of all the capital stock in the two companies; Jackson having an option from all the other stockholders, under which option he had authority to make a sale.

On February 9, 1923, the defendant gave to Erwin, through one David Clark, one of the plaintiffs in error, an option for the purchase of all the stock of both companies. For the purpose of convenience, Erwin and Clark, plaintiffs in error here and plaintiffs below, will be referred to here as plaintiffs. Clark became jointly interested with Erwin in the option, and they proceeded to organize a company to purchase the physical property of both mills. On March 9, 1923, plaintiff Erwin notified defendant that he had decided to make the purchase in accordance with the terms of the option, and on March 26, 1923, plaintiff Erwin wrote the defendant at his place of business, in Richmond, Va., making payment of $297,000, in accordance with the terms of the option. At the time the defendant gave the option to plaintiff Erwin, he discussed the general conditions surrounding the two mills with plaintiff Clark, and at the same time handed Clark, in defendant's office in Richmond, statements purporting to show the financial condition of both companies. The statement of the Franklinville Manufacturing Company included one item under the head of accounts receivable, $6,131.27. It developed later that included in this item was the sum of $1,544.94, that represented money advanced to contractors working on permanent improvements at the mill, which improvements had not been completed; it being the custom on the books of the company to carry such items under the head of "Accounts Receivable," until the completion of the work, when the whole amount paid under the contract would be transferred to the permanent improvement or plant account.

In the financial statement of the Randolph Manufacturing Company, the sum of $7,033.96 was included in the accounts receivable account that was in the same condition as the amount above set out in the Franklinville Manufacturing Company's statement. In the statements for the two companies there was included a total of $8,578.90, as accounts receivable, which was in fact the amount paid to contractors engaged in building improvements at the plant, on account of their contract.

In the interim between giving of the option and the payment of the purchase price, plaintiff Clark inspected the properties of both companies and had access to the books, and on March 23, 1923, Clark, three days before the making payment of the purchase

price of the stock, and before the making of any payment on account of the option, was informed by the bookkeeper of the two companies as to the exact condition that existed as to the accounts receivable. Clark at once went to Erwin, and advising him of what he had discovered, and without calling the matter in any way to the attention of defendant, Jackson, plaintiffs went ahead and completed the purchase of the stock, on March 26. Plaintiffs had in the meantime organized a company to take over the physical property purchased under the option, and on March 27, the day after making the payment for the purchase of the stock, and receiving the stock, the plaintiff Clark wrote the defendant, requesting him to refund the sum of $8,578.90, involved as above described in the financial statements of the two companies It is admitted that the plaintiffs made a profit out of the transaction of at least $20,000.

In July, 1924, plaintiffs brought this suit in the superior court of Mecklenburg county, N. C., and in September, 1924, this cause was removed to the District Court of the United States for the Western District of North Carolina, and in January, 1924, a trial was had at Charlotte, N. C. The plaintiff, Erwin, was not present at the trial and did not testify. Upon conclusion of the taking of the evidence, the trial judge directed a verdict for the defendant, and gave judgment against the plaintiffs for the costs, to which judgment of the trial court the plaintiffs sued out this writ of error.

It is contended on behalf of the plaintiffs that the method of bookkeeping by which payments to contractors on account of work being done on permanent improvements were carried as "accounts receivable" was wrong, and amounted to a misrepresentation, and constituted a fraud at law. While a majority of the accountants that testified in the case took the position that the system used by the two corporations involved was wrong, the accountant who had charge of the audits and bookkeeping system for the companies testified that he had directed the account to be kept in the manner in which it was kept, and that he considered it correct.

[1] Be that as it may, there was nothing to connect the defendant in any way with the manner in which the books were kept, and nothing to show that he had knowledge of the system used. On the contrary, the plaintiff Clark repeatedly assured the defendant that he did not think that he had willfully or intentionally misrepresented the matter. On first calling Jackson's attention to the situation in his letter of March 27, 1923, Clark says: "We realize fully that there was no effort to deceive, but was simply due to the system of bookkeeping, but at the same time we had a right to assume that bills receivable represented accounts due the mill as quick assets."

Again in his letter of April 3, to defendant Jackson, Clark says: "While we know there was no intention to deceive, you have to admit that the statement rendered to us showed certain quick assets which did not exist."

And again on April 11, plaintiff Clark says to the defendant: "We realize fully, as stated in the former letters, that there was no intention to defraud or misrepresent. * * * *"

And again, on May 8, Clark wrote Jackson: "We know, of course, that it was not an intentional misrepresentation; but nevertheless it was a misrepresentation, and we do not feel that we are called upon to sustain this loss."

There is also evidence to the effect that, at the time the option was given and once afterward, Clark was urged to have his own accountants go over the books.

While the system of bookkeeping complained of did not in any way change the total of the assets of the companies, the trouble seems to have been that Clark and Erwin sold the physical properties of the companies at a price fixed by contract before the fact as to the accounts was discovered, retaining the quick assets, so called, for themselves, and payments to contractors for improvements, while properly chargeable to assets, do not constitute quick assets, but finally go to plant or improvement accounts. But there is no contention that defendant, Jackson, in any way guaranteed the accounts, or in any way made any representation about them, other than to furnish the plaintiffs with the statements that had been given him at a board meeting, made up by a bookkeeper, about which he had no personal knowledge.

"A false representation does not amount to a fraud in law, unless it be made with a fraudulent intent. * * * It must be a representation of existing facts that turn out to be false, and that the party at the time knew to be false." Cooper v. Schlesinger, 111 U. S. 148, 4 S. Ct. 360, 28 L. Ed. 382.

"In an action for deceit, either knowledge on the part of defendant of the falsity of the alleged representations or what in law is equivalent thereto must be averred and proved." Kimber v. Young (C. C. A.) 137 F. 744.

"To constitute actionable fraud, it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." Bell v. Morley (C. C. A.) 223 F. 628. Southern Development Co. v. Silva, 125 U. S. 247, 8 S. Ct. 881, 31 L. Ed. 678.

Applying the principles laid down in these cases, it will be seen that the present case lacks, not only one, but practically all, of the essential elements necessary before the defendant could be held liable. Jackson made no representation, other than to pass on to Clark the statement received from the bookkeeper, which Clark had every opportunity to verify, and which he did in fact investigate, and about which he found out the exact facts before he or Erwin paid Jackson anything. The plaintiffs did not act in reliance upon the representations and thereby suffer injury. It is admitted that the transaction was a very profitable one for the plaintiffs.

It is contended that, before Clark found the fact as to the accounts, he had contracted to sell the physical property to a new company, organized by Erwin and Clark; but an examination of the proposition made to the new company, dated March 6, 1923, shows that it was made "subject to an option." Had there been, on good grounds, any failure to exercise the option, Clark's agreement to sell the newly organized company would not have been enforceable.

"The law raises no presumption of knowledge of falsity from the single fact per se that the representation was false. There must be something further to establish the defendant's knowledge." Southern Development Co. v. Silva, supra.

"Fraud is never presumed, but must be clearly made out. * * * If the purchaser investigates for himself, and nothing is done to prevent a full investigation, he cannot say that he relied on the vendor's representations." Farrar v. Churchill, 135 U. S. 609, 10 S. Ct. 771, 34 L. Ed. 246.

Good faith and fair dealing required the plaintiffs, upon the discovery by them of the facts in connection with the items in the accounts receivable account, to at once inform the defendant, Jackson, of their discovery. This they did not do, and for this failure to inform Jackson, Erwin, not having testified,

of course, makes no explanation. The explanation of plaintiff Clark, as given in his testimony, was to the effect that they thought they could get a diminution of the price to the amount of the disputed items by "asking it later." With the full knowledge of the true situation, and three days after the discovery of the exact facts, one of the plaintiffs, Erwin, at the instance of the other plaintiff, Clark, wrote defendant, Jackson, inclosing a check for $297,000, and, without mentioning the disputed items, concluded the letter of transmission with the following:

"Trusting you will find this check correct, and that the transaction will prove satisfactory to all parties concerned, I am

"Very truly,
"J. Harper Erwin."

[2] This action of the plaintiffs seems to show conclusively that they did not believe that the defendant knew of the facts with regard to the disputed items. This is in line with the repeated declarations in Clark's various letters. This action of the plaintiffs also shows that they preferred, in view of its profitableness to them, to go ahead with the transaction with full knowledge of all the facts, rather than to take any chance on raising the question with defendant, Jackson. This was not fair to Jackson; he was also entitled to know the facts and to be put upon notice that, after transferring the stock under the option, he would be called upon to make restitution to the extent of the amount of the disputed items. In failing to give the defendant the benefit of the knowledge they possessed, and in concluding the transaction as they did, the plaintiffs waived any possible right they might have had to hold Jackson liable, and the injury, if any, was self-inflicted.

This principle is ably discussed in Bean v. Bickley, 187 Iowa, 689, 174 N. W. 675, where the court said: " * * * If the contract remains executory, in whole or in part, when the fraud is discovered, and no injury will be suffered by rescinding instead of affirming, then any injury caused by proceeding is self-inflicted."

Even if there had been fraudulent misrepresentation by Jackson, the conduct of the plaintiffs in proceeding with full knowledge of all the facts, before they had paid any part of the option price, would have had the legal effect of condoning the fraud. "Volenti non fit injuria."

"With respect to an executory contract, one may not, after knowledge of the fraud, continue to carry it out, exacting performance from the other party to it, receive its

benefits, and still pursue an action for deceit; and this because continued execution with knowledge of the fraud signifies the ratification of a contract voidable for fraud, and condones the fraud." Kingman v. Stoddard (C. C. A.) 85 F. 740.

See, also, Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798; Fitzpatrick v. Flannagan, 106 U. S. 648, 1 S. Ct. 369, 27 L. Ed. 211.

There is a full discussion by both sides as to the measure of damages in the case; but, in view of our conclusion as to the other points involved, we do not deem it necessary to consider the question of the proper measure of damages.

A careful study of the record in the case does not disclose anything that in any way smacks of fraud or unfair dealing that can be charged to the defendant, H. W. Jackson. There is nothing to show that he acted other than in a fair and honorable manner, and nothing properly chargeable to him that would hold him legally liable for the mistake, if mistake it was, in the bookkeeping of the two companies.

The action of the trial judge in directing a verdict for the defendant was proper, and the judgment of the court below is affirmed.