C. W. DENNING & CO. v. SUNCREST LUMBER CO.

No. 3128.

Circuit Court of Appeals, Fourth Circuit.

July 28, 1931.

Felix E. Alley, of Waynesville, N. C. (S. W. Black, of Bryson City, N. C., A. Hall Johnston, of Asheville, N. C., E. P. Stillwell, of Sylva, N. C., and Alley & Alley, of Waynesville, N. C., on the brief), for appellant.

Thomas L. Johnson and J. Bat Smathers, both of Asheville, N. C. (Thomas S. Rollins, Jr., of Asheville, N. C., on the brief), for appellee.

Before PARKER, Circuit Judge, and McCLINTIC and ERNEST F. COCHRAN, District Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment on promissory notes given for the purchase price of timber. The plaintiff, the Suncrest Lumber Company, was the seller of the timber, and the defendant, C. W. Denning & Company, was the purchaser. Defendant admitted the execution of the notes, but pleaded by way of counterclaim fraud and false warranty in the sale of the timber. The jury returned a verdict for plaintiff for the sum of $12,500, being half of the amount sued for; and from judgment thereon defendant has appealed.

The pertinent facts may be briefly stated: Plaintiff, being the owner of a large tract of timber land in Western North Carolina, entered into a written contract agreeing to sell and convey to the defendant the merchantable timber thereon, excepting, however, the pulp and extract wood, the hemlock and spruce timber, and so much of the chestnut timber as might not be required to complete the total of 20,000,000 feet sold to the defendant. There was no warranty as to quantity; but the contract described the timber sold as "twenty million feet of merchantable timber" on the tract of land described, and the purchaser agreed to pay therefor $100,000. The contract shows that this amount was based upon the assumption that the purchaser was obtaining 20,000,000 feet under the contract and was paying for same at the rate of $5 per thousand feet; $50,000 of the purchase price was paid in cash and notes were executed for the remainder. Two of these, amounting to $25,000, remained unpaid at the time of the institution of the action and plaintiff sought judgment for that amount.

At the time the defendant was negotiating for the purchase of the timber, plaintiff's manager, one Gaskill, stated to the officer of the defendant conducting the negotiations in its behalf that he believed the boundary of timber to contain 20,000,000 feet. He stated also that it had been cruised by one Lemieux, whose cruise showed 36,000,000 feet, but that he thought that estimate too high. A copy of Lemieux's cruise was furnished to defendant and its representatives made a visit to the timber and looked it over, without cruising or estimating it, however, for the purpose of determining upon methods of operation. Lemieux seems to have been highly regarded by both parties, and his cruise apparently satisfied them that there was at least 20,000,000 feet of timber on the land. There is no evidence that the plaintiff's manager used the cruise of Lemieux for the purpose of deceiving the agents of defendant, that he made any false representations of fact, or that he expressed any opinion which he did not honestly entertain.

After the execution of the contract, defendant entered and began cutting timber upon the land, and by April, 1929, had cut approximately eight and one-half million feet therefrom and had paid $75,000 on the purchase price. It then ceased operations because of the condition of the lumber market, which had declined, and because it had on hand a large quantity of lumber which it was unable to sell. Shortly thereafter, its mill was destroyed by fire. It failed to pay the notes given for the remainder of the purchase price and, when suit was instituted by plaintiff, pleaded that there was a deficiency in the timber sold entitling it to a cancellation of the notes outstanding and to a recovery by way of counterclaim of payments already made in excess of the value of the timber conveyed. Defendant introduced evidence showing that the merchantable timber on the boundary did not exceed 15,000,000 feet. The evidence of plaintiff, on the other

hand, showed that it was well in excess of 20,000,000 feet.

The trial judge charged the jury that there was no evidence of fraud and withdrew that issue from their consideration. He also withdrew defendant's claim of damages on account of loss of prospective profits on the deficiency in the timber conveyed. He instructed the jury that there was no warranty of quantity, in the sale of the timber, but further instructed them that if they should find that there was less than 20,000,000 feet, defendant would be entitled to recover for the shortage at the rate of $5 per thousand feet and would be entitled to credit the amount of the recovery on the notes sued on and have judgment against the plaintiff for the balance if any. The jury returned a verdict for plaintiff for the sum of $12,500, which under the charge amounted to a finding by them that there was a shortage of 2,500,000 feet. Three questions are presented by the appeal: (1) Whether there was error in withdrawing the issue of fraud from the consideration of the jury; (2) whether there was error in withdrawing from consideration on the issue of damages defendant's claim to prospective profits on the timber as to which there was a deficiency; and (3) whether there was prejudicial error in the instruction that there was no warranty as to the quantity of the timber sold. We think that all of these questions must be answered in the negative.

Defendant's contention as to fraud must fail because there is no evidence of scienter or fraudulent intent. There is evidence, it is true, that plaintiff's manager stated to the representative of defendant that there was 20,000,000 feet of merchantable timber on the land; but the evidence shows that he stated this as a mere estimate or opinion, and there is no evidence that he did not honestly entertain such opinion. On the contrary, the evidence leads irresistibly to the conclusion that he did entertain it both at the time the opinion was expressed and also at the time of the trial. He furnished defendant's representative with copy of the Lemieux cruise showing that the amount of timber on the land was largely in excess of 20,000,000 feet, but at the same time warned him that he regarded this estimate as high and invited investigation. Expressions of opinion and estimates by one having peculiar knowledge of the facts of a situation, or in position to have such knowledge, may in some circumstances amount to fraud; but before they can be deemed fraudulent it must appear that they were made with knowledge of their falsity or in reckless disregard of truth. They can never be deemed fraudulent where the party making them honestly believes them to be true and has a reasonable basis for such belief.

A case directly in point is the recent decision of this court in Halsey v. Minnesota-South Carolina Land Co. (C. C. A. 4th) 28 F.(2d) 720, 722, where the question is fully discussed in the light of the controlling authorities. In that case it was alleged that plaintiff had purchased certain timber rights from defendant because of representations by the latter that the timber standing on the tracts of land involved exceeded 20,000,000 feet; that at the time of the representations defendant furnished plaintiff with the field note book of a timber estimator who shortly before had made an estimate for defendant, showing that there were some 19,250,000 feet of timber on the land; that defendant assured plaintiff that these figures were conservative, that the timber actually on the land would exceed the amount shown by the figures by 20 per cent., and that the amount of the timber was approximately 24,000,000 feet. It was alleged that, as a matter of fact, there were only 12,652,194 feet of timber on the land and that plaintiff had been greatly damaged by reason of the false representations of the defendant. In sustaining a demurrer to the complaint, we said: "The complaint states no cause of action ex delicto, and this because there is no averment that the representations relied on were false to the knowledge of defendant or its agents, or that they were made recklessly as positive assertions without knowledge of their truth or falsity, or that they related to matters peculiarly within the knowledge of defendant or its agents. It is true, of course, that in an action on the case for false warranty, which is an action sounding in tort, it is not necessary to allege or prove scienter. Shippen v. Bowen, 122 U. S. 575, 7 S. Ct. 1283, 30 L. Ed. 1172; Schuchardt v. Allen, 1 Wall. 359, 368, 17 L. Ed. 642. But this cannot be maintained as an action for false warranty, because, as shown above, there was no warranty. The only question which remains, therefore, is whether in an action for damages for false representation it is necessary to allege and prove scienter. In a few of the states, unquestionably, the action can be maintained without such allegation or proof. 12 R. C. L. 347; note 16 Ann. Cas. 646 et seq. But it is equally clear that under the rule settled by the overwhelming weight of authority, which is the rule in South Carolina as well as in the federal courts, such allegation and

proof are necessary. State v. Bolyn, 143 S. C. 63, 141 S. E. 165 at page 173; Bromonia Co. v. Greenwood Drug Co., 78 S. C. 482, 59 S. E. 363; Poag v. Charlotte Oil Co., 61 S. C. 190, 39 S. E. 345; Gem Chemical Co. v. Youngblood, 58 S. C. 56, 36 S. E. 437; Chisholm v. Gadsden, 1 Strob. [S. C.] 220, 47 Am. Dec. 550; Munro v. Gairdner, 3 Brev. [S. C.] 31, 5 Am. Dec. 531; Cooper v. Schlesinger, 111 U. S. 148, 4 S. Ct. 360, 28 L. Ed. 382; Erwin v. Jackson (C. C. A. 4th) 22 F.(2d) 56; Bell v. Morley (C. C. A. 9th) 223 F. 628; 20 Cyc. 13; 26 C. J. 1063; note 16 Ann. Cas. 646; note Ann. Cas. 1913C, at page 64."

The general rule is well stated in 20 Cyc. 13, as follows: "To constitute actionable fraud, it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."

This succinct and lucid statement has been adopted in many decisions (see 26 C. J. 1063), and has been approved by this court in an able opinion by Judge Northcott in the recent case of Erwin v. Jackson, 22 F.(2d) 56. And it has been adopted also by the Ninth Circuit in a case practically "on all fours" with the case at bar. Bell v. Morley, 223 F. 628.

In Tarault v. Seip, 158 N. C. 363, 74 S. E. 3, 6, Mr. Justice Brown thus states the rule as it is applied by the courts of North Carolina: "An essential element of actionable fraud is the scienter or knowledge of the wrong on the part of the vendor. Where the representation is made as a part of the warranty, the vendor is held liable for his statement, whether he knew it to be true or not; but, where the action is for fraud, the burden is upon the party setting it up to prove the scienter. This distinction is well made by Chief Justice Pearson in Etheridge v. Palin, 72 N. C. 216, and is well supported by numerous authorities in this and other states. This court said, in Tilghman v. West, 43 N. C. 183: 'Nor can fraud exist where the intent to deceive does not exist, for it is emphatically the action of the mind that gives it existence.' And in Hamrick v. Hogg, 12 N. C. 350, Judge Henderson says: 'It is not sufficient that the representation be false in point of fact; the defendant must be guilty of a moral falsehood. The party making a

representation must know or believe it to be false, or, what is the same thing, have no reason to believe it to be untrue.' The action for fraud and deceit rests in the intention with which the representation is made, and not upon the representations alone."

Coming to the second question, we think that the learned judge below properly withdrew from the consideration of the jury the question of prospective profits on the shortage of the timber. There was no evidence that defendant had sold at a profit the 20,000,000 feet of timber which it had purchased from the plaintiff; nor was there evidence upon which to base a reasonable conclusion that same could be sold at a profit. The price of lumber had declined after the making of the contract and the demand had fallen off to such an extent that, after manufacturing eight and one-half million feet, defendant voluntarily suspended operations although admittedly a large amount of timber remained uncut and several hundred thousand feet of logs which had been cut had not been sawed. Manifestly whether a profit could be realized by further operations under such circumstances was purely a matter of speculation. It is argued that because the shortage existed at the time of sale, the ability to realize a profit must be referred to that date. But the answer to this is that there was no understanding that the timber was to be sold, and it was not sold, by defendant at that time. Defendant undertook to manufacture the timber into lumber and sell the lumber as it was manufactured; and whether it would realize a profit depended upon a number of factors, including cost of operation and the condition of the lumber market. While engaged in its operations, conditions changed to such an extent that it suspended the cutting of timber for which it had already paid and which was readily available. How can it be said with any certainty that it would have realized any profit on the timber which was short, when the prospect of profit on that which was available was so remote that operations were suspended? To ask the question is to answer it.

Assuming, without deciding, that profits from manufacturing the timber into lumber and selling it were reasonably within the contemplation of the parties, so that in case of shortage loss of such profits could be considered as an element of damages, it is clear that to justify recovery the fact that such profits would have been realized must be established with reasonable certainty, and that a recovery of prospective profits cannot be allowed

where, as here, same are entirely speculative. Boston & Albany R. R. v. O'Reilly, 158 U. S. 334, 15 S. Ct. 830, 39 L. Ed. 1006; Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 199, 205, 210, 11 S. Ct. 500, 35 L. Ed. 147; De Ford v. Maryland Steel Co. (C. C. A. 4th) 113 F. 72; Taber Lumber Co. v. O'Neal (C. C. A. 8th) 160 F. 596, 602; Curran v. Smith (C. C. A. 3d) 149 F. 945, 952; Iron City Toolworks v. Welisch (C. C. A. 3d) 128 F. 693; Central Coal & Coke Co. v. Hartman (C. C. A. 8th) 111 F. 96, 102; Central Trust Co. of New York v. Clark (C. C. A. 8th) 92 F. 293, 298; 8 R. C. L. 452; 17 C. J. 791.

On the third question, the instruction that there was no warranty of quantity in the sale of the timber could not have been prejudicial to the defendant, in view of the fact that the court at the same time instructed the jury that they were to credit the defendant at the contract price with any shortage in the timber sold, and of the further fact that the jury actually did give the defendant credit for $12,500, which was the contract price for two and one-half million feet. Even if the language of the contract be construed as a warranty of quantity, there was no evidence which would justify the awarding of damages on a basis different from that upon which damages were allowed for shortage in the timber sold. Instead of presenting defendant's contention under the theory of a breach of warranty of quantity, the court presented it under the theory of a breach of contract to convey; and under the latter theory instructed the jury to give defendant all that it would have been entitled to recover under the former.

A careful examination of the record discloses no error prejudicial to defendant, and the judgment below will accordingly be affirmed.

Affirmed.